JUDGE SPRIZZO

COPY

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**05 CV 2817**

MERCHANT MEDIA, LLC and ALLSTAR
MARKETING GROUP, LLC,

:

                              **Plaintiffs,**

**Case No.: 05 CV**

:

-against-

:

**COMPLAINT**

**H.S.M. INTERNATIONAL, HESH
MIRPURI, MEDIA BRANDS WORLDWIDE
LIMITED and SANJAY MIRPURI,**

:

:

                             **Defendants.**  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

*(stamp: RECEIVED ⋅ 1 4 2005 ⋅ U.S.D.C. S.D.N.Y. CASHIERS)*

       Plaintiffs Merchant Media, LLC ("MM") and Allstar Marketing Group, LLC

("Allstar") (collectively, "Plaintiffs"), by their undersigned attorneys Kane Kessler, P.C. and

Coleman Sudol Sapone, P.C., as and for their Complaint against defendants H.S.M. International

("HSM"), Hesh Mirpuri ("Hesh Mirpuri") (HSM and Hesh Mirpuri collectively referred to

herein as the "HSM Defendants"), Media Brands Worldwide ('Media Brands") and Sanjay

Mirpuri ("Sanjay Mirpuri") (Media Brands and Sanjay Mirpuri collectively referred to as the

"Media Brands Defendants") (all of the defendants collectively referred to herein as

"Defendants") allege as follows:

<u>**NATURE OF THE ACTION**</u>

       1.      This is a civil action for patent infringement, unfair competition and false

designation of origin and copyright infringement under federal law and unfair competition and

unjust enrichment under the laws of New York State.

       2.      By this action, Plaintiffs seeks remedy for Defendants' persistent, blatant

and intentional infringement of Plaintiffs' intellectual property rights despite due notice and

demand that Defendants cease and desist from such infringement.

#222621.1

## JURISDICTION AND VENUE

3.      This is an action for patent infringement arising under the provisions of the patent laws of the United States, Title 35 of the U.S. Code, unfair competition and false designation of origin arising under the trademark laws of the United States, Title 15 of the U.S. Code, copyright infringement arising under the copyright laws of the United States, Title 17 of the U.S. Code, and unfair competition and unjust enrichment under the laws of the State of New York.

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338 and 1367.

5.      This Court has jurisdiction over Defendants and venue is proper in this district under 28 U.S.C. § 1391 (b) and (c) and 1400(b) in that Defendants regularly transact business in this District and the injuries complained of herein arise from said transactions.

6.      This Court also has jurisdiction over Defendants because Defendants have committed the tortious acts complained of herein within this District, which acts have caused and will cause injury to Plaintiffs within this District.

7.      This Court also has jurisdiction over Defendants because Defendants have committed tortious acts without this District which have caused and will cause injury to Plaintiffs within this District which injury was reasonably foreseeable and Defendants derive substantial revenue from interstate commerce.

## THE PARTIES

8.      Plaintiff MM is a limited liability company duly organized and existing under and by virtue of the laws of the Commonwealth of Massachusetts, having its principal

place of business at 10 California Avenue, Framingham, Massachusetts.   MM does business within this judicial district.

9.    Plaintiff Allstar is a limited liability company duly organized under and by virtue of the laws of the State of New York, having its principal place of business at 4 Skyline Drive, Hawthorne, New York, in this judicial district.

10.    Upon information and belief, HSM is a company located in Hong Kong.

11.    Upon information and belief, Hesh Mirpuri is an individual who resides in Hong Kong.   Mirpuri is, upon information and belief, a principal owner, officer, director and/or shareholder of HSM.   Upon information and belief, Mirpuri had full knowledge and control over the infringing activities of HSM as alleged herein.

12.    Upon information and belief, Media Brands is a company located in Hong Kong.

13.    Upon information and belief, Sanjay Mirpuri is an individual who resides in Hong Kong.   Sanjay Mirpuri is, upon information and belief, a principal owner, officer, director and/or shareholder of Media Brands.   Upon information and belief, Sanjay Mirpuri had full knowledge and control over the infringing activities of Media Brands as alleged herein.

## BACKGROUND OF THE ACTION

14.    Plaintiffs are leading producers of household and consumer products specializing in the direct response and catalog business.   Plaintiffs are in the business of creating, manufacturing, distributing and selling a variety of unique household products directly to consumers and retailers.   Among other things, Plaintiffs expend substantial sums of money to produce and air television commercials to promote and sell their products.

#222621.1                                        3

**Plaintiffs' SMART SPIN Product, Patent and Trademark**

15.     In 2004, Plaintiffs caused to be created a household container storage system having as its function the convenient storage and retrieval of storage containers. Plaintiffs, in cooperation with their distributors and agents, have fabricated and sold the container storage systems since September 2004.

16.     On July 1, 2003, the United States Patent and Trademark Office issued U.S. Patent No. 6,585,119 (the "'119 Patent") to the inventor Saul Palder.  A true and correct copy of the '119 Patent is attached hereto as Exhibit A.  Plaintiff MM is the exclusive licensee of the '119 Patent.

17.     Plaintiff MM has adopted and used the SMART SPIN trademark as a source identifier for its container storage product.

18.     Plaintiff MM is the owner of all right, title and interest in and to the common law trademark SMART SPIN and SMART SPIN and Design.

19.     Plaintiff MM has pending United States trademark applications for registration of the SMART SPIN trademark, serial number 78/459,873, in connection with "containers, namely, plastic storage containers and a storage carousel" which was filed on July 30, 2004, and the SMART SPIN and Design trademark, serial number 78/551071, in connection with "containers, namely, plastic storage containers and a storage carousel" which was filed on January 20, 2005.

20.     Plaintiffs have sold and distributed their SMART SPIN brand storage system in distinctive and original retail packaging featuring photographs, promotional copy and the SMART SPIN trademark.

#222621.1

21.     Plaintiffs developed original artwork and advertising copy for a web site hosted at the URL www.smartspin.com.  A copy of the Plaintiffs' web site is attached as <u>Exhibit</u> <u>B</u>.

22.     Plaintiffs have gone to great effort and expense in developing and promoting the SMART SPIN trademark.  Among other things, Plaintiffs have spent substantial sums of money to produce and air television commercials to promote and sell the SMART SPIN brand storage system.

23.     As a result of the significant advertising, promotion and sale of the SMART SPIN brand storage system, Plaintiff MM has developed considerable goodwill and customer recognition in the SMART SPIN trademark.

24.     Plaintiffs MM and Allstar are engaged together in a joint venture and/or distributor-manufacturer relationship with respect to the intellectual property and products that are the subject of this action.  Pursuant to the joint venture or distributorship agreements that govern these relationships, Plaintiff Allstar is entitled to share and possesses an interest in the profits to be gained from sale of Plaintiffs' products.

**<u>Defendants' Infringement of the '119 Patent and the SMART SPIN Trademark</u>**

25.     After Plaintiffs' successful launch of the SMART SPIN brand storage system, without the consent or authorization of Plaintiffs, Defendants advertised, promoted and sold their own counterfeit storage system product.  Defendants marketed and sold their own storage container system alternatively using the trademarks "Smart Spin", "Spin Express" and/or "Spin 'N' Store".  Defendants sold their storage container system products using art and copy virtually identical to Plaintiffs' SMART SPIN web site.  A photocopy of solicitations from the

HSM Defendants is attached hereto as <u>Exhibit C</u> and a photocopy of solicitations from the Media Brands Defendants is attached hereto as <u>Exhibit D</u>.

26.     The storage system products sold by Defendants did not originate from Plaintiffs.

27.     Upon information and belief, defendant Hesh Mirpuri is using or has encouraged, ratified, or adopted the aforementioned actions of the HSM Defendants.

28.     Upon information and belief, defendant Sanjay Mirpuri is using or has encouraged, ratified or adopted the aforementioned actions of the Media Brands Defendants.

## COUNT I

### Patent Infringement Against All Defendants
### Under 35 U.S.C. §271

29.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 28 above as if set forth fully herein.

30.     Defendants have in the past infringed and continue to infringe, contribute to infringe, and/or induce infringement of United States Patent No. 6,585,119 by making, using, selling, importing and/or offering to sell, in this judicial district and elsewhere in the United States, products covered by one or more claims of the '119 Patent.

31.     The aforementioned actions of infringement have been willful and deliberate.

32.     Defendants' acts of infringement have caused damage to Plaintiffs and Plaintiffs are entitled to recover from the Defendants the damages they have sustained in an amount to be proven at trial.

33.     Upon information and belief, defendant Hesh Mirpuri has directed, encouraged, ratified, contributed to and/or adopted the patent infringement of the HSM Defendants as hereinbefore alleged.

34.     Upon information and belief, defendant Sanjay Mirpuri has directed, encouraged, ratified, contributed to and/or adopted the patent infringement of the Media Brands Defendants as hereinbefore alleged.

35.     Defendants' acts of infringement have caused and will continue to cause irreparable harm to Plaintiffs.  Plaintiffs have no adequate remedy at law.

## COUNT II

### (False Designation of Origin, Unfair Competition, False Representation Against All Defendants
### Under 15 U.S.C. § 1125(a))

36.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 35 above as if set forth fully herein.

37.     Subsequent to being put on notice of Plaintiffs' claims herein, Defendants willfully continued their course of wrongful conduct.

38.     Defendants' uses of Plaintiff MM's trademark and packaging in interstate commerce as hereinbefore alleged misrepresented the nature, characteristics and qualities of Defendants' goods and constitute unfair competition and false representation under federal law.

39.     Defendants' unauthorized use in commerce of plaintiff MM's  trademark and Defendants' use of trademarks confusingly similar to MM's trademark and packaging in connection with Defendants' production, sale and distribution of storage systems constitutes false designation of origin under federal law.

#222621.1                                        7

40.     Defendants' acts are likely to cause confusion, mistake or deception on the part of the public as to their affiliation, connection or association with Plaintiff MM and to cause confusion, mistake or deception on the part of the public as the true origin, sponsorship or approval of Defendants' business or services, all in violation of 15 U.S.C. §1125(a).

41.     Upon information and belief, Defendants have undertaken these acts maliciously, willfully and with the devious intent to cause confusion, mistake and deception on the part of the public.

42.     Defendants' acts have damaged Plaintiffs' business reputation and goodwill, and have unjustly enriched Defendants.

43.     Defendants' acts have caused and, unless enjoined, will continue to cause, irreparable harm and injury to Plaintiffs for which there is no adequate remedy at law.

44.     Defendants' acts have caused, and unless enjoined, will continue to cause, inevitable public confusion and substantial and irreparable harm to the public.

45.     Upon information and belief, defendant Hesh Mirpuri has directed, encouraged, ratified, contributed to and/or adopted the infringing acts of the HSM Defendants as hereinbefore alleged.

46.     Upon information and belief, defendant Sanjay Mirpuri has directed, encouraged, ratified, contributed to and/or adopted the infringing acts of the Media Brands Defendants as hereinbefore alleged.

47.     Plaintiffs are entitled to a preliminary and permanent injunction restraining Defendants, or any person or entity acting in concert with them, from engaging in any acts in violation of the United States trademark laws.

#222621.1

## COUNT III

### (Copyright Infringement Against All Defendants Under 17 U.S.C. §101 et seq.)

48.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 47 above as if set forth fully herein.

49.     Plaintiff MM is the owner of a valid registration issued by the United States Copyright Office for the copyright in and to its SMART SPIN product packaging hereinbefore alleged. The registration issued effective December 15, 2004 and has been given Registration No. TXu1-201-923 (copy of registration attached as Exhibit D). The registration covers the photographs, art and text contained on the original packaging.

50.     In connection with the launch of the SMART SPIN brand product, Plaintiffs created a unique, original television commercial that has aired on national and international television since the product launch.   The television commercial contained original narrative, text and visual representations.

51.     Plaintiff MM is the owner of a valid registration issued by the United States Copyright Office for the copyright in and to its television commercial for the SMART SPIN storage system product, registration number PA 1-251-859 (copy of registration attached hereto as Exhibit E). The registration issued effective September 24, 2004.  Since the date of the copyright registration Plaintiff MM has complied in all respects with the Copyright Act of 1976, as amended.

52.     In connection with the launch of the SMART SPIN brand product, Plaintiffs created a unique web site, including text and photographs and has used that web site in connection with the SMART SPIN product since its product launch.   The web site contained original narrative, text and visual representations.

#222621.1                                                    9

53.     Plaintiff MM is the owner of a valid registration issued by the United States Copyright Office for the copyright in and to its web site for the SMART SPIN brand storage system product, registration number TX 6-095-661 (copy of registration attached hereto as Exhibit F). The registration issued effective November 30, 2004. Since the date of the copyright registration plaintiff MM has complied in all respects with the Copyright Act of 1976, as amended.

54.     Since the first publication of the SMART SPIN packaging, web site and television commercial, Defendants have infringed Plaintiff MM's exclusive rights as owner of the registered copyrights to the SMART SPIN packaging, web site and television commercial by copying, reproducing, distributing, displaying and utilizing the text and photographs from such packaging, web site and commercial for Defendants' financial and competitive advantage. Copies of Defendants' infringing materials are attached as Exhibit C and Exhibit D.

55.     Defendants have also infringed Plaintiff MM's exclusive right in the subject copyrights by copying or creating derivative works therefrom.

56.     Such conduct constitutes copyright infringement as defined by Title 17 of the United States Code.

57.     Defendants' infringing materials are substantially similar if not strikingly similar to Plaintiff MM's copyrighted materials.

58.     Upon information and belief, Defendants have willfully infringed Plaintiff MM's copyrights.

59.     Upon information and belief, defendant Hesh Mirpuri has directed, encouraged, ratified, contributed to and/or adopted the copyright infringement of the HSM Defendants as hereinbefore alleged.

60.     Upon information and belief, defendant Sanjay Mirpuri has directed, encouraged, ratified, contributed to and/or adopted the copyright infringement of the Media Brands Defendants as hereinbefore alleged.

61.     Plaintiffs are entitled to a preliminary and permanent injunction restraining Defendants, or any person or entity acting in concert with them, from engaging in any acts in violation of the United States copyright laws.

62.     Plaintiffs are further entitled to recover from Defendants the damages they have and will sustain as a result of the Defendants' wrongful acts as described above.

63.     Plaintiffs are also entitled to recover Defendants' gains, profits and advantages obtained as a result of their wrongful acts.

64.     Plaintiffs are entitled to recover their costs and reasonable attorney's fees incurred in this action pursuant to 17 U.S.C. § 505.

## COUNT IV

### (Unfair Competition Against All Defendants Under New York Law)

65.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 64 above as if set forth fully herein.

66.     The actions and conduct of Defendants constitute unfair competition under New York law.

67.     By virtue of the aforementioned acts and conduct of Defendants, Plaintiffs have sustained, and will continue to sustain, economic damage including, but not limited to, injury to Plaintiffs' business reputation, loss of business, loss of advantageous business contacts and expectancies in customers, loss of economic gain and loss of value and intellectual property.

## COUNT V

### (Unjust Enrichment Against All Defendants Under New York Law)

68.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 67 above as if set forth fully herein.

69.    Defendants have misappropriated for their own use and gain Plaintiffs' intellectual property as hereinbefore and hereinafter alleged.

70.    Defendants have used and plan to continue to use Plaintiffs' intellectual property.

71.    Defendants, as a result of its aforementioned wrongful acts, have been unjustly enriched in an amount to be determined at trial.

### JURY DEMAND

Plaintiffs demand a trial by jury on all issues to triable.

**WHEREFORE**, Plaintiffs demand judgment and an order against Defendants as follows:

(a)    Preliminary and permanent injunctive relief restraining Defendants, or any person or entity acting in concert with them, from engaging in any acts in violation of the United States patent, trademark and copyright laws, including:

(1)    Making, using or selling any products that infringe United States Patent No. 6,585,119

(2)    Using the trademark "SMART SPIN" or any reproduction, counterfeit, copy, colorable imitation, or confusingly similar variation thereof;

#222621.1                                    12

(3)    Engaging in acts that constitute infringement, unfair competition, false representation, or false designation of origin under trademark laws of the United States and which would damage or injure Plaintiffs;

(4)    Making, reproducing, reprinting, publishing, displaying, manufacturing, selling, offering for sale, promoting, advertising, distributing and/or commercially exploiting in any manner, either directly or indirectly, any materials that include any of Plaintiffs' copyrighted materials or materials that are substantially similar thereto;

(5)    Inducing encouraging, instigating, aiding, abetting or contributing to any of the aforesaid acts;

(b)    That Defendants be required to take any actions as may be directed by this Court for the purpose of attempting to remedy and alleviate any consumer confusion or any loss of goodwill suffered by Plaintiffs as a result of Defendants' prior acts;

(c)    That Defendants be ordered to deliver up for destruction as the Court shall direct, any and all labels, signs, prints, packages, wrappers, receptacles and advertisements (and the like) in its possession or under its custody or control that use the SMART SPIN trademark in connection with any product or that use any of Plaintiffs' copyrighted materials;

(d)    That Defendants recall from all distributors, wholesalers, jobbers, dealers, retailers and customers and deliver to Plaintiffs any products reproducing, displaying, publishing or promoting Plaintiffs' trademarks or copyrighted materials;

(e)      That Defendants be directed to file with the Court and serve on Plaintiffs, no later than thirty days after receiving service of the Court's order, a report in writing and under oath setting forth in detail the manner and form in which they have complied with each provision of injunctive relief;

(f)      Awarding Plaintiffs damages in an amount to be proven at trial for damages caused by Defendants' infringement, contributory infringement and induced infringement of one or more claims of the patents-in-suit and treble damages for willful and deliberate infringement pursuant to 35 U.S.C. §284 and costs and attorney's fees pursuant to 35 U.S.C. §285;

(g)      Awarding Plaintiffs statutory damages for Defendants' infringement of Plaintiff's copyrights;

(h)      That Defendants be ordered to:

(1)      Account for and pay over to Plaintiffs an amount equal to three times all of the gains, profits, savings, and advantages realized by Defendants as a result of their infringing activities;

(2)      Pay over to Plaintiffs an amount equal to three times the amount of damages sustained by Plaintiffs as a result of Defendants' infringing activities, said amount to be determined by this Court;

(3)      Reimburse Plaintiffs for any reasonable attorney's fees incurred as a result of Defendants' infringing activities, including all attorneys' fees incurred during this action;

(i)      That Plaintiff be awarded both prejudgment and postjudgment interest on any monies to be paid by Defendants;

#222621.1                              14

(j)      Directing the United States Customs Service to issue an exclusion order and/or a cease and desist order pursuant to 19 U.S.C. § 1337.

(k)      On all claims, attorney's fees and the costs and disbursements of this action, together with such other, further and different relief as to the Court seems just, proper and equitable.

Dated: New York, New York
       March 14, 2005

                                KANE KESSLER, P.C.

                                By: _____
                                     Adam M. Cohen (AMC-9918)
                                     1350 Avenue of the Americas
                                     New York, New York 10019
                                     (212) 541-6222

                                COLEMAN SUDOL & SAPONE, P.C.
                                R. Neil Sudol (RNS-5933)
                                950 Third Avenue, 11th Floor
                                New York, NY 10022

                                Attorneys for Plaintiffs Merchant Media, LLC and
                                Allstar Marketing Group, LLC

#222621.1                         15

Exhibit A

US006585119B2

(12) **United States Patent**

Palder

(10) Patent No.: **US 6,585,119 B2**

(45) Date of Patent: **Jul. 1, 2003**

(54) **MODULAR STORAGE SYSTEM FOR MULTIPLE STACKS**

(76) Inventor: **Saul Palder**, 1476 River St., Hyde Park, MA (US) 02136

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/938,919**

(22) Filed: **Aug. 24, 2001**

(65) **Prior Publication Data**

US 2003/0038097 A1 Feb. 27, 2003

(51) Int. Cl.[7] ............................................... A47F 5/00
(52) U.S. Cl. ...................... 211/49.1; 211/163; 211/78; 312/133; 312/322
(58) Field of Search ............................ 211/77, 78, 163, 211/49.1, 41.2, 194, 95; 248/416; 312/133, 238, 322

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 617,478 A | * 1/1899 | Cohen | |
| 1,690,394 A | * 11/1928 | Belt | |
| 1,759,140 A | * 5/1930 | Silberger | |
| 2,070,055 A | * 2/1937 | Levien | |
| 2,121,711 A | * 6/1938 | Patts | ........................... 211/77 |
| 2,622,956 A | * 12/1952 | White | |
| 3,107,959 A | * 10/1963 | Maxwell | |
| 3,467,455 A | * 9/1969 | Caldemeyer | |
| 3,982,800 A | 9/1976 | Gorton | |
| 4,143,765 A | * 3/1979 | Moss | ........................ 211/78 X |
| 4,181,037 A | 1/1980 | Boon et al. | |
| 4,433,885 A | 2/1984 | Baker | |
| 4,775,055 A | 10/1988 | Morse | |
| 5,024,168 A | 6/1991 | Stravitz | |
| 5,033,626 A | * 7/1991 | Platti | ........................ 211/163 X |
| 5,207,335 A | 5/1993 | Voelz | |
| 5,299,695 A | 4/1994 | Taylor, Jr. | |
| 5,547,085 A | 8/1996 | Gaus | |
| 5,577,823 A | 11/1996 | Maglinger | |
| 6,017,108 A | 1/2000 | Domenig | |
| 6,149,019 A | * 11/2000 | Newman | .................... 211/40 |

OTHER PUBLICATIONS

US 5,357,851, 10/1994, Bowman (withdrawn)
Kitchen Accessories Unlimited Website Printout Dated Feb. 5, 2001.

* cited by examiner

*Primary Examiner*—Robert W. Gibson, Jr.
(74) *Attorney, Agent, or Firm*—Wolf, Greenfield & Sacks, P.C.

(57) **ABSTRACT**

A storage system for stacks of like articles consisting of a fixed base positioned within a storage area and carrousel like stackholder assembly between a position vertically aligned with the base and at least partially external of the storage system. The stackholder assembly is formed with a plurality of radially arranged wells which may be dimensioned to receive different sized and/or shaped articles.

15 Claims, 7 Drawing Sheets







Fig. 1

Fig. 2



Fig. 3

Fig. 4



*Fig. 5*



**Fig. 6**



**Fig. 7**



Fig. 8

Fig. 9



Fig. 10



# Fig. 11

US 6,585,119 B2

**1**

## MODULAR STORAGE SYSTEM FOR MULTIPLE STACKS

### FIELD OF THE INVENTION

The present invention relates to a storage system for multiple stacks of articles such as containers and in particular to a storage system adapted to stack a plurality of different sized articles in a plurality of stacks.

### BACKGROUND OF THE INVENTION

Handling and storing stacks of like articles, such as containers or dishes or bowls involves a number of problems which have been handled in a variety of ways. For example, in restaurants, food "take-out" containers as well as washed dishes are frequently placed in stacks on shelves for subsequent use. Frequently these shelves are open and the stacks themselves are not protected. Consequently, there is not only a potential for damage to these stacks from a variety of causes, but also the stacks may more readily become soiled or contaminated. In other instances, open storage of stacked dishes and like articles involves undesirable esthetic effects.

Frequently, trays and fixed bins for receiving stacks of articles such as dishes are used, but are not altogether satisfactory for a variety of reasons.

### SUMMARY OF THE INVENTION

The present invention is directed to a system for storing and stacking like articles. In one embodiment the present invention provides an alternative system for storing and stacking articles in restaurants and in homes in a manner by which stacks of articles such as containers are safeguarded against inadvertent damage, and stored in a manner that will minimize inadvertent soiling and improve quick availability using a minimal space.

In the present invention, a storage system is provided for multiple stacks of like articles. In one embodiment of the invention, a base is shaped and sized to fit within a storage cabinet or counter. A rotatable modular stackholder is secured to the base by means that permits the stackholder to move to and from a position within the storage cabinet and remain in vertical alignment with the base. The modular array of stackholders may be rotated at any position within or outside the cabinet or counter. In this embodiment, the modular stackholder comprises multiple units that have mating surfaces adapted to interengage one another. Any number of these units may be stacked, depending upon the space in which the stackholder is positioned. Each of the stackholder units are similarly shaped with a plurality of different sized compartments to receive stacks of articles, such as containers and dishes.

These and other objects and advantages of the present invention will be more clearly understood when considered in conjunction with the accompanying drawings.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a perspective view of a storage unit in an extended open position showing an embodiment of the invention;

FIG. 2 is a top plan view of the embodiment of FIG. 1 also in an extended position;

FIG. 3 is a cross sectional side view taken along the line 3—3 of FIG. 2;

FIG. 4 is a fragmentary cross sectional view taken on the line 4—4 of FIG. 3;

**2**

FIG. 5 is an exploded perspective view;

FIG. 6 is a perspective view of a preferred embodiment of a storage unit in a closed position;

FIG. 7 is a top plan view of the embodiment of FIG. 6;

FIG. 8 is a view taken along the line 8—8 of FIG. 7;

FIG. 9 is a fragmentary cross sectional side view of the embodiment of FIG. 6; and

FIG. 10 is an exploded perspective view of the embodiment of FIG. 6; and

FIG. 11 is a plan view of a stackholder used in further embodiment of the invention.

### DETAILED DESCRIPTION

The storage system of the present invention is intended primarily for use in storing containers, dishes and similar items. However, it may be used to store other stackable or non-stackable articles for household, business or food purposes. In one preferred form illustrated in the present invention, the system is designed for use in a restaurant, home kitchen cabinet, or counter. It may, however, be used in other storage facilities as well. The unit itself consists primarily of a base 10, assembly 20, and means 30 (FIG. 5) for interengaging the base 10 and stackholder assembly or support 20 for movement of the stackholder assembly 20 to and from a position in vertical alignment with the base 10. The storage system may be made of any suitable material, such as wood, plastic or metal. It may also be formed of mesh material or a series of appropriately oriented bars or slats. However, for mass-produced, relatively inexpensive units, injection molded plastic is a preferred form of material.

Base 10 may be varied in shape and size, but preferably is cylindrical in shape. Alternately, the base, as well the stackholder, may have other shapes such as square or rectangular, depending upon the particular shape and size of the space in which they are to be located. When used in a kitchen or restaurant to store containers such as dishes, the unit may be cylindrical in shape with an overall diameter in the order of 10 inches to 2 feet. The overall height is determined by the cabinet or counter or shelf height in which the unit is positioned.

In the embodiment illustrated in FIG. 1, the base 10 has a continuous sidewall 11 depending from a top 12. The sidewall 11 may be formed with finger room for grabbing this base and pulling it outward. The sidewall or skirt 11 may have any desired height and may be further provided with means for locking or securing the base to a shelf. Securing means might comprise tabs with screw holes extending from the base or alternately screws extending downwardly through the base 10 into the supporting shelf or cabinet base. Pads of velcro can be used to hold the unit in place.

The top 12 is formed with an elongated slot 13 that extends radially from the center of the top to a distance short of the skirt 11. This slot 13 may be defined by a depending circumferential flange 14 (FIG. 4) that extends from its edge downwardly within the base 10. The base 10 may also be provided with a pair or more of parallel re-enforcing ribs 15 that extend traversely from the lower or under surface of top 12 across the base. These terminate short of flange 14 so as not to interfere with the slot 13. The upper surface of the top 12 may also be formed with a plurality of guide rails 16 that project upwardly from the surface of the top 12 in spaced relation to one another and parallel to slot 13.

The means 30 for inter-engaging the base 10 and stackholder assembly 20 includes a bearing load base 31 which is

3

coaxially mounted on the top 12 (see FIG. 5). The bearing load base 31 is formed with an opening 32 coaxial with and having the same diameter as the width of the slot 13 in the top 12 (FIG. 4). The bearing load base 31 is also formed with a plurality of upwardly extending ribs 33 and downwardly extending ribs 34. The downwardly extending ribs 34 are spaced apart and parallel to one another, with the ribs 34 engaging and guided by the rails 16 formed in the top 12. A ball bearing race 35 of conventional design is positioned on the top surface of the bearing load base 31 at its outer periphery. The bearing top cap 36 is coaxially aligned with the bearing load base 31. An opening 37 in the bearing top cap 36 is coaxial aligned with the opening 32 in the bearing load base and slot 13 in the base 10. The bearing top cap is formed with an upwardly displaced dome 38 having a top surface 39 and depending sidewalls 40. There is also provided an annular flange 41 that extends upwardly from the top surface 39 and radially spaced from opening 37. The depending sidewalls 40 are arcuately contoured as illustrated at 44 (FIG. 5) to receive portions of the stackholder assembly 20 as hereafter described.

The modular stackholder assembly 20, in a preferred embodiment, consists of a multiple number of individual, stackable units. These individual units, include in this preferred embodiment, a base stackholder 50, an intermediate stackholder 51, and a top stackholder 52 respectively aligned one on top of the other. While the preferred embodiment illustrated shows three stackholder units, fewer or greater numbers are also contemplated. The overall shape may also be varied from the cylindrical shape illustrated.

The base stackholder 50 is formed with a bottom wall 60 that has an outer diameter coextensive with the outer diameter of the base 10. It is also provided with a downwardly extending continuous skirt 61 that is aligned with the skirt 11 of the base 10. The skirt 61 extends downwardly into close proximity to, but is spaced from the upper end of skirt 11 (FIG. 3). A wall 63 extends upwardly from the outer periphery of the bottom wall 60 except at a plurality of locations in which the wall 63 extends inwardly to form a plurality of cylindrical wells 64. In this preferred embodiment, four such cylindrical wells 64 are defined. However, fewer or more are also contemplated. In the embodiment illustrated, the wells are all of substantially equal dimension, but the invention also contemplates wells of varying dimensions. These wells 64 are intended to receive stacks of dishes, cups, or the like and for that reason, the specific shape and size of the well may be varied for the particular purpose for which the unit is intended.

In this embodiment, each essentially cylindrical well 64 is defined by arcuate wall 63 which are uniformly spaced from centers 65 with the radius of these wells less than half the distance between adjacent centers, thereby providing spacing between adjacent wells. The centers 64 are positioned close enough to the skirt 61 to form a relatively wide opening 66 which is less than the diameter of the well 65 in the side of the well adjacent to the skirt, thus providing easy hand access to a stack of items positioned within each well, while, at the same time, providing means for securing the stack of items within the well.

A cross-shaped opening 67 is centrally formed in the cap 78 of the base stackholder 50. This cross-shaped opening is shaped to receive a center column connector 68 which extends downwardly through the top stackholder 52, intermediate stackholder 51, and base stackholder 50 into the base 10 through the openings 37, 32, and 13. The connector 68 has a cap 90 and four orthogonally related flanges that are shaped and sized to slide through the cross shaped openings

4

67, 89 to rotationally engage the stackholders 52, 51 and 50 and rotationally lock them together. The lower end 70 of the connector 68 engages a slide plate 72 that extends lengthwise of the slot 13. The bottom 70 of the connector 68 is secured by a cap nut 76 that locks the connector 68 to the slide plate 72 for sliding movement with the slide plate 72 slidingly engaging the flanges 14. A cap 78 extends across the upper edge of wall 63 with the cross shaped opening 67 formed therein. The outer edges of the cap 78 are formed with a shoulder 83 that forms an engaging element for the intermediate stack 51.

The intermediate stackholder 51 and top stackholder 52 may be similar in overall design. Each is formed with a sidewall 82 having an outer periphery at a radial distance equal to the radius of the base stackholder 50. The lower edge of wall 82 is shaped and sized to fit into and be engaged by shoulder 83. These stackholders 51 and 52 thus define a series of openings 84 that are aligned and co-extensive with and in part form the wells 64.

A cap 88 extends across wall 82 with a shoulder formed at the junction of the edges of cap 88 and sidewall 82. This shoulder is sized and shaped to engage the lower edge of a like unit for stacking purposes. The center of cap 88 is formed with a depression shaped and sized to receive cap 90 of the connector 68. The slot 89 is shaped to receive flanges 91 is formed through this depression.

The intermediate stackholder 51 may be replicated with more than one of such stackholders 51 included between the top stackholder 52 and base stackholder 50 to increase the height of the combination.

In the arrangement illustrated, the Lazy Susan-like unit having, in its fully assembled configuration three stackable units, may be stored in a position in which each of the parallel stackable units are directly over the base. Alternately, the stackable units may be moved laterally from the base by sliding the stackable units outwardly for more easy access to the items stored within the wells. Additionally, the Lazy Susan configuration permits the stackable units to be rotated at any time for ease in replacing or removing items such as dishes within the wells about an axis parallel to the stacks and to the lateral movement.

When stored in a cabinet such as a kitchen or restaurant cabinet the base of the unit may be fixed to the bottom of the cabinet by adhesive foam pads, velcro or small screws 95 and other suitable securing means. If preferred, such small screws extend through a mounting flange into the cabinet shelf. Thus the base is fixed within the cabinet but the upper portions may be slid outwardly and rotated for easy access to anyone of the multiple wells with the articles stacked on them. The wide openings formed by the sidewalls allow easy access to the stacked articles from the side of the stack. The arrangement also allows for sample inventory of the number of stacked articles in each well.

FIGS. 6 through 10 inclusively illustrate a preferred embodiment of the present invention, which is also used primarily for storing containers, dishes, and similar articles. It may also be used to store other stackable or non-stackable articles commonly used in households, businesses, or in food storage activities. This unit consists primarily of a base 100, stackholder assembly 120, and means 130 for interengaging the base 100 and stackholder assembly 120 for movement of the stackholder assembly 120 to and from a position in vertical alignment with the base 100 (FIGS. 8 & 9). This system may be made of materials similar to the previously described embodiment. Preferably, however, the design of this system utilizes injection molded plastic. The

5

base 100 is similar in overall shape to base 10, but may be varied in shape and size. Preferably it is cylindrical in shape, but may be varied, depending upon the shape and size of the space in which it is to be located. In a typical installation it may have an overall cylindrical diameter in the order of ten inches to two feet. The overall height and the number of stack units will depend upon the cabinet or counter shelf height in which the unit is positioned. In the embodiment illustrated in FIG. 6 the base 110 has a continuous sidewall 111 depending from a top 112. The sidewall or skirt 111 may be formed with an indent 111a to permit one to grasp assembly 120 and pull it out. The sidewall or skirt may have any desired height and may be provided with means for locking and securing the base to a shelf. Securing means may comprise a tab with screw holes extending from the base. Alternately, screws 195 may extend downwardly through the base into the supporting shelf or cabinet base. Other suitable means may also be used to secure the skirt 111. The top 112 is formed with an elongated slot 113 that extends radially from the center of the top to a distance short of the skirt 111 (FIG. 10). This slot 113 may be defined by a depending circumferential flange 114 (FIG. 9) that extends from its edge downwardly within the base 110. The base 110 may also be provided with a pair or more of parallel reinforcing ribs 115 that extends from the lower surface or undersurface of the top 112 transversely across the base 100. These ribs terminate short of flange 114 so as not to interfere with slot 113. The upper surface of the top 112 may be formed with a plurality of guide rails 116 to project upwardly from the surface of the top 112 in space relation to one another and parallel to slot 113.

The means of 130 for inter-engaging the base 110 and stackholder assembly 120 includes a bearing load base 131, which is coaxially mounted on the top 112 (FIGS. 9 & 10). The bearing load base 131 is formed with an opening 132 coaxially with and having the same diameter as the width of the slot 113 in the top 112 (FIG. 9). The bearing load base 131 is also formed with a plurality of upwardly extending ribs 133 and downwardly extending ribs 134. The downwardly extending ribs 134 that are spaced apart and parallel to one another, with the ribs 134 engaged and guided by the rails 116 formed in the top 112. A ball bearing race 135 of conventional design is positioned on the top surface of the bearing load base 131 at its outer periphery. Unlike the embodiment of FIGS. 1–5, the embodiment of this unit is provided with a base support 136 having a bottom 137 that sits on and covers the bearing load base 131 with the undersurface of the bottom 137 resting on and engaged by the ball bearing base 135. Sidewall 138 extends about periphery of the bottom 137, with the sidewall extending downwardly to form a skirt and slightly upwardly to form a retaining shoulder about the periphery of the bottom 137. An axial opening 139 is formed in the bottom 137 with the opening aligned with slot 113 and the opening 132. An annular flange 140 may extend downwardly from the undersurface of base support 136 with the flange 140 extending about the periphery of bearing load base 131.

Base support 136 forms a platform upon which a multiple number of individual stackable units are secured. In the embodiment illustrated three stackholders 150, 151, and 152 are illustrated. These are respectively aligned one on top of the other, while a preferred embodiment illustrated shows three stackholder units, fewer or greater numbers are also contemplated. The overall shape may also be varied from the cylindrical shape illustrated.

The stackholders 150, 151, and 152 are similar in construction. Each has an outer diameter slightly less than the

6

outer diameter of the base support 136, each is coaxially aligned with it. Stackholders 150, 151, and 152 are and are similar in structure and arranged in a nested relation one above the other. These stackholders are formed with an outer wall 163. The wall 163 has an irregular shape, which essentially defines a plurality of cylindrical wells 164 (FIG. 10). In the embodiment illustrated, four cylindrical wells 164 are defined. However, fewer or more are also contemplated. In the embodiment illustrated, the wells are all of substantially equal dimension and are arranged radially around the axis of the stackholders 150, 151, and 152 at 90 degrees from one another. However, the wells may be formed of different sizes and at different angles. Wells may also be specifically shaped to fit the contour of the components, which are to be stored within them. These wells are intended to receive like articles, such as dishes, manufacturing components and the like. The specific shape and size of the well may, therefore, be varied for the particular purpose for which the unit is intended. The wall 163 defining the wells and the outer surfaces of each of the stackholders 150, 151, and 152 its outer edge is defined by uniform radius from the center of the stackholders. In this preferred embodiment the wells themselves are defined by a portion of the wall 163 having an arcuate configuration. The arcuate surface is defined by a radius, which is less than half the distance between the center from which an adjacent radius of the well may be measured, thereby providing spacing between the adjacent wells. These dimensions are best illustrated in FIG. 7 by the dotted line defining the radius at 165. These centers 165 are close enough to the sidewall 138 to form relatively wide openings 166 with these openings having a width less than the diameter of the wells 164 so as to provide easy access to stacks of items positioned in each well, while at the same time providing sufficient wall surface to secure the stack of items within the well. Each of the stackholders 150, 151, and 152 is formed with a top wall 170 that extends entirely across the units with the top wall 170 in the preferred embodiment having essentially a cross like configuration. The top wall 170 is formed with a depression or well 171 extending radially outward from its center. The well 171 may be integrally formed with the stackholders 150, 151, and 152 or may be formed as a separate component secured to it. The production method depends largely upon molding processes and costs. This well 171 is formed with a bottom wall 172 and a connecting sidewall 173 extending upwardly from the bottom 172 to the top wall 170 (FIG. 8). The bottom 172 is formed with a central opening that is coaxial with the openings 139, 132 and the slot 113. These wells 171, in part form a means for interconnecting the stackholders one with the other. The interconnection between the stackholders 152 and 151, as well as any additional stackholders that might be used is effected by a connector generally illustrated at 180. The connector 180 is also used to connect the lower most stackholder 150 to the base 100. These connectors 180 comprise an elongated steel rod 181 having a threaded end 182 and a cap 183 at the end of the rod opposite its threaded end. The cap 183 is preferably molded plastic that is permanently molded to the upper end of the rod 181. It is formed with upwardly extending flange 184 shaped to permit finger turning, using integrally formed wings that extend outwardly from a center core. The center of the cap 183 is formed with a threaded recess 185 shaped and sized to receive the threaded end 182 of the connector 180 positioned immediately above it. The lower most connector 180 is also provided with a cylindrical open ended molded plastic connector 186.

Molded plastic connector 186 is positioned in the openings 139 and extends downwardly through the slot 113 (FIG.

7

9). The lower end of this connector 186 is engaged by a self tapping screw and washer assembly 187 that secures the slide plate 192 below the flange 114 in sliding engagement with it. The molded plastic connector 186 receives the lower most connector 180, which extends at least partially down the opening in the plastic connector 186. The cap 183 of the connector sits and is rotationally engaged with the bottom 172 of the well 171. Suitable means such as external or sleeve 188 may be used to inter-engage the rod 181 with the bottom 172 in a manner that will permit the rod be threaded downwardly.

The rods 181 of the uppermost stackholders 150 and 151 secure the stackholders in which they are positioned to the stackholder below by threadingly engaging the rod 181 with the threaded recess 185 in the cap 183 immediately below it.

The stackholders 150, 151, and 152 are aligned with one another with the lower edge of one resting on and engaging the upper edge of the stackholder immediately below it in a manner to form elongated wells that extend upwardly through each of the stackholders. For this purpose the upper periphery edge of each stackholder may be formed with a shoulder 189 shape and sized to receive a snug fit to the lower periphery of the stackholder immediately above it.

In this arrangement the stackholders may be locked one to the other.

This unit may be stored as shown in FIG. 6 or may be extended similarly to the arrangement of FIG. 1 when in use. When the stackholders are extended they may be rotated for easy access to any one of the wells 164.

The present invention also contemplates use for storage or containers such as bottles in which specially designed stackholders 250, such as shown in FIG. 11 are used. In this example, the stackholder 250 is designed to accommodate a series of bottles, such as wine bottles. The stackholder is formed with a base 236 having an outer periphery defined by an edge and a depending skirt 211 that is parallel to and aligned with a base that may be similar to the base 100 of the FIG. 6 embodiment. It is also formed with an axial opening 239 similar to the axial opening 139 for interengagement with connectors similar to connectors 180. Suitable means may be provided at spaced intervals about the edge 211 as illustrated at 251 to support a similar stackholder 250 above. The means 251 may comprise an upstanding sidewall segment with its upper end shaped to fit into a corresponding recess in a stackholder above.

The stackholder 250 is formed with a series bottle shaped recesses 252. These recesses or depressions in the surface 253 of stackholder 250 may have a depth of in the order of 30% to 40% of the diameter of an average 12" long bottle.

In place of the spacers 251 the arrangements contemplate each stackholder 250 has its depending skirt 211 extending downwardly at spaced intervals to space it from and support it on the next lower stackholder 250.

The system also contemplates a motorized system in which the unit is tuned by a motor control preferably located below the base.

What is claimed is:

1. A storage system for multiple stacks of like articles comprising:

a base, a stackholder assembly, and means for interengaging said base and stackholder assembly for movement of said stackholder assembly to and from a position in vertical alignment with said base; said stackholder assembly comprising separable upper and lower stackholder units having facing mating surfaces shaped to permit interengagement thereof,

8

said upper and lower stackholder units having a plurality of aligned means for receiving a stack of like articles that may extend into both upper and lower stackholder units.

2. A storage system as set forth in claim 1 wherein said means for interengaging said base and said stackholder assembly comprises a slide having interengaged components moveable relative to one another with one interengaged component secured to the lower stackholder unit and another interengaged component secured to the base.

3. A storage system as set forth in claim 1 wherein said means for interengaging said base and said stackholder assembly comprises a pivot means with one portion of the pivot engaging the base and another part engaging the lower stackholder unit.

4. A storage system as set forth in claim 1 wherein said stackholder assembly comprises a cylindrical member having a plurality of article receiving compartments.

5. A storage system as set forth in claim 4 wherein said compartments are shaped and sized to receive different width stacks of articles.

6. A storage system for multiple stacks of containers and the like for storage in a cabinet, comprising a base and a stackholder assembly and means for interengaging the stackholder assembly for movement between a position in vertical alignment with the base within a cabinet and a position at least partially outside the cabinet; said stackholder assembly having a plurality of vertically extending compartments of different sizes shaped to receive different size stacks of articles.

7. A storage system for multiple stacks of containers as set forth in claim 6 wherein said stackholder assembly comprises a lower stackholder unit and upper removable modular stackholder units.

8. A dispenser for multiple stacks of containers and the like comprising: a plurality of stack of containers

a base to be positioned in a storage area for said containers and the like,

a support for said stacks, said support having means for receiving and holding said plurality of stacks, said stacks arranged in spaced columnar relation to one another,

said support and base interengaged with one another by a slide mechanism in part engaging said base and in part to said support for movement of said support from and to a vertical alignment with said base.

9. A dispenser as set forth in claim 8 wherein said support has an overall cylindrical configuration and said means for receiving and holding a plurality of stacks comprises wells having sides and dimensions shaped to receive stacks of different sizes.

10. A dispenser for multiple stacks of similar elements comprising a base to be positioned in a storage area, a plurality of upwardly extending like units arranged in stacks,

a support for said plurality of upwardly extending units arranged in stacks, said stacks of like units in parallel relation to one another,

and means for supporting said support for rotation about an axis parallel to said stacks of like units and for displacing movement parallel to said axis.

11. A stackholder as set forth in claim 1 wherein each of said stackholder units are similar in shape, said stackholder units formed with a top wall and depending sidewalls, with

9

10

the sidewalls having arcuate spaced segments at a uniform radial distance from a center with inwardly portions of the sidewall defining recesses in turn defining wells when a plurality of units are stacked one above the other.

12. A stackholder as set forth in claim 11 having a plurality of connectors for inter-engaging said units, said connectors extending vertically through the center of said units and having means for inter-engaging with one another.

13. A stackholder as set forth in claim 12 wherein said units are each formed with a centrally located well in which a portion of a connector is located and from which the connector extends downwardly for engagement.

14. A storage system as set forth in claim 6 wherein said vertically extending compartments are arranged parallel to one another.

15. A storage system comprising a base to be positioned in a storage area for containers and the like, a plurality of vertically aligned supports with each support shaped to receive stored articles, each of said supports for receiving in nested relation a plurality of horizontally aligned bottles thereon, a slide mechanism operatively interengaging said base and said vertically aligned supports for movement of said supports to and from vertical alignment with said base.

*  *  *  *  *

Exhibit B

Welcome to the official SmartSpin website          Order by Phone:800-643-2772



# Just Slide Spin and Store!

49 Piece Storage System          order here I customer service I privacy policy

Includes 12 Bonus Containers & Lids

Now Only **$19.99** Plus s&h

## Organize All Your Storage Needs in Less Than 1 Square

**Smart Spin Storage System** conveniently holds all your storage needs, right at your fingertips. Its unique patented design slides forward, then spins like a carousel, for easy selection. You could even find a container with a blindfold on. Smart Spin holds an enormous amount of food, yet takes up about the space of a coffee maker.



Smart Spin System
• **1** Smart Spin
• **X 8** - 24 oz. Contain
• **X 8** - 16 oz. Contain
• **X 8** - 8 oz. Containe
• **X 24** - Easy Peel L







## ORDER RIGHT HERE!- ONLY $19.99 plus s&h TODAY



Canadian Customers Please Click Here

**Just fill in your shipping information to receive your Smart Spin Storage System at this incredibly low introducto**

| | |
|---|---|
| *First Name: | *Last Name: |
| *Address 1: | Address 2: |
| *City: | *State: Choose State |
| *Zip: | *Country: United States |
| *Email: | Phone: ( ) - |
| (used for order confirmation) | optional (used for order confirmation) |

☑ Billing Information is same as Shipping.

Continue



**INVENTORY BLOW OUT!**
Through today's special inventory BLOW OUT we're giving you the amazing 6-in-1kitchen utensil **ABSOLUTELY FREE!** Just complete your order to take advantage of this special value.



Exhibit C

**From:** Hesh - HSM International [mailto:hesh@hsmtv.com]
**Sent:** Monday, January 17, 2005 2:26 AM
**To:** HSM International *As Seen On TV*
**Subject:** Spin Express

Dear Sirs,

We would like to offer our latest product "Spin Express"  All detail are as under and picture attached herewith:-

Item      :   Spin Express
Price      :   US$4.90 Fob Ningbo
Packing   :   Each set in color giftbox, 12 sets / carton.
Ctn Meas :   65.5 x 46.5 x 59.25 cm
Ctnr Qty  :   1848 sets in 20' container, 4500 sets in 40' HQ container

1/18/2005

Delivery   :   Within Mid Feb 2005 (First Come First Serve)
Sample   :   Available End January.  If samples required, please note 1 set will be free of charge but freight charges to collect.  Please inform us your courier name and
                    account number.

## Spin Express Information

With Spin Express organize and store all your containers and lids in less than 1 square feet. Turn any disaster into an organized master. Spin Express conveniently holds all your storage needs, right at your fingertips. Its unique design slides forward, then spins like a carousel, for easy selection. Slide spin and store thats it. You could even find a container with a blindfold on. Spin Express holds an enormous amount of food, yet takes up about the space of a coffee maker. Spin Express is perfect for any cabinet, door, shelf or countertop. Clear containers make it easy to see what each one holds. Same size locking lids not only makes it easy to find the right size lid every time but also spill proof. Keep leftovers fresh, organize meals and pack lunches with Spin Express. Spin Express storage containers are microwave able and dishwasher safe.

**Features and Benefits:**
~Containers are visible to see what each one holds
~Same Size Locking Lids for all sizes of containers
~Use it anywhere you want; kitchen, office, garage
~Takes up about a cubic foot of space

**Smart Spin Food Container Set includes:**
~ Smart Spin Carousel Holder
~ 8 - 8 oz Clear Containers
~ 8 - 16 oz Clear Containers
~ 8 - 24 oz Clear Containers
~ 24 Locking Lids
~ Instructions

We will now look forward to your favorable reply.

Best regards,
HSM International

Nari

HSM INTERNATIONAL
Unit C, 15/Floor | Kee Shing Centre, 74-76 Kimberley Road | Tsim Sha Tsui, Kowloon | Hong Kong
Tel: +852 2765 8254 | Fax: +852 2333 2191 | Mobile: +852 9365 5422
www.hsmtv.com | hesh@hsmtv.com

1/18/2005









Exhibit D

-----Original Message-----
From: "Sanjay M." <sanjay@media-brands.com>
Date: Wed, 26 Jan 2005 20:48:50
To:MB <sanjay@media-brands.com>
Subject: Smart Spin

Dear Sirs,

We would like to take this opportunity to offer to you our latest product – SMART SPIN.
All details are under and picture attached herewith for your kind review.

Item: Smart Spin
Price: US$ 3.60/set Fob Ningbo
Packing: Each set packed in color giftbox, 12 sets/carton Ctn Meas: 65.5 x 46.5 x 59.25 cm
Cntr Qty: 1848 sets/20' container, 4500 sets/40' HQ container

We look forward to hearing from you.

Sincerely,
Sanjay M.

Media Brands Worldwide Limited
(manufacturers of As Seen On TV, Mail Order & Innovative Consumer
products)

15A, Kam Wing Commercial Bldg.,
28-30 Minden Avenue, Tsim Sha Tsui
Kowloon, Hong Kong
Tel: (852) 2369-9709   Fax: (852) 2369-9896
Email: sanjay@media-brands.com

Sent wirelessly via BlackBerry from T-Mobile.

1













# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Form TX**
For a Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE

**TXu 1 – 201 – 923**

EFFECTIVE DATE OF REGISTRATION

| 12 | 15 | 04 |
|----|----|----|
| Month | Day | Year |

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**TITLE OF THIS WORK ▼**

SMART SPIN Box Packaging

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**PUBLICATION AS A CONTRIBUTION** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared    **Title of Collective Work ▼**

If published in a periodical or serial give   **Volume ▼**   **Number ▼**   **Issue Date ▼**   **On Pages ▼**

---

**NAME OF AUTHOR ▼**

Merchant Media, LLC

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☒ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ USA
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?    ☐ Yes ☒ No    If the answer to either of these questions is "Yes," see detailed instructions
Pseudonymous?  ☐ Yes ☒ No

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed ▼
Photographs and text

**NOTE**

Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?    ☐ Yes ☐ No    If the answer to either of these questions is "Yes," see detailed instructions
Pseudonymous?  ☐ Yes ☐ No

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed ▼

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?    ☐ Yes ☐ No    If the answer to either of these questions is "Yes," see detailed instructions
Pseudonymous?  ☐ Yes ☐ No

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed ▼

---

**YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED**   This information must be given ◀ Year in all cases.
2004

**DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK**
Complete this information   Month ▶          Day ▶          Year ▶
ONLY if this work has been published.                                    ◀ Nation

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2 ▼

Merchant Media, LLC
10 California Avenue
Framingham, MA 01701

**APPLICATION RECEIVED**
DEC 1 5 2004
**ONE DEPOSIT RECEIVED**
DEC 1 5 2004
**TWO DEPOSITS RECEIVED**

**FUNDS RECEIVED**

**TRANSFER** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright ▼

See instructions before completing this space

DO NOT WRITE HERE OFFICE USE ONLY

---

**MORE ON BACK ▶**   • Complete all applicable spaces (numbers 5-9) on the reverse side of this page
• See detailed instructions    • Sign the form at line 8

**DO NOT WRITE HERE**
Page 1 of ___

| EXAMINED BY | _Mul dgC_ | FORM TX |
|---|---|---|
| CHECKED BY | | |
| ☐ CORRESPONDENCE Yes | | FOR COPYRIGHT OFFICE USE ONLY |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☑ No If your answer is "Yes," why is another registration being sought? (Check appropriate box ) ▼
a ☐ This is the first published edition of a work previously registered in unpublished form
b ☐ This is the first application submitted by this author as copyright claimant
c ☐ This is a changed version of the work, as shown by space 6 on this application

If your answer is "Yes," give **Previous Registration Number** ▶                    **Year of Registration** ▶

**DERIVATIVE WORK OR COMPILATION**
Preexisting Material Identify any preexisting work or works that this work is based on or incorporates ▼

N/A

**Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed ▼

N/A

See instructions before completing this space

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account
**Name** ▼                              **Account Number** ▼

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent   Name/Address/Apt/City/State/ZIP ▼
**Brendan P . McFeely, Esq.**
**Kane Kessler, P.C.**
**1350 Avenue of the Americas**
**New York, New York 10019**
Area code and daytime telephone number ▶ (212) 519-5188          Fax number ▶ (212) 245-3009
Email ▶
bmcfeely@kanekessler com

**CERTIFICATION*** I, the undersigned, hereby certify that I am the
Check only one ▶
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☑ authorized agent of   Merchant Media, LLC
Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

8

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date

Brendan P  McFeely                                        Date ▶ December 10, 2004

Handwritten signature (X) ▼

X _____

| Certificate will be mailed in window envelope to this address: | Name ▼ Brendan P  McFeely/Kane Kessler, P C | • Complete all necessary spaces • Sign your application in space 6 |
|---|---|---|
| | Number/Street/Apt ▼ 1350 Avenue of the Americas | 1 Application form 2 Nonrefundable filing fee in check or money order payable to Register of Copyrights 3 Deposit material |
| | City/State/ZIP ▼ New York, New York 10019 | Library of Congress Copyright Office   TX 101 Independence Avenue, S E Washington, D C  20559-6222 |

9

*17 U S C  § 506(e)  Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2 500

Rev July 2003—xxx  Web Rev  July 2003  ⊕ Printed on recycled paper                    U.S Government Printing Office 2000-461 113/20,021

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Form PA**
For a Work of Performing Arts
UNITED STATES COPYRIGHT OFFICE

**PA 1-251-859**



*PA0001251859*

**EFFECTIVE DATE OF REGISTRATION**

SEPT 24 2004

Month    Day    Year

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

## 1

**TITLE OF THIS WORK ▼**

SMART SPIN TELEVISION COMMERCIAL

**PREVIOUS OR ALTERNATIVE TITLES ▼**

TELEVISION ADVERTISEMENT

**NATURE OF THIS WORK ▼** See instructions

## 2

**a** NAME OF AUTHOR ▼

MERCHANT MEDIA, LLC

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☒ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of   USA
{ Domiciled in _____

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?  ☐ Yes ☒ No
Pseudonymous?  ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼
SCRIPT, VIDEO, GRAPHICS  OF A TWO MINUTE COMMERCIAL

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**b** NAME OF AUTHOR ▼

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of _____
{ Domiciled in _____

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?  ☐ Yes ☐ No
Pseudonymous?  ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

**c** NAME OF AUTHOR ▼

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of _____
{ Domiciled in _____

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?  ☐ Yes ☐ No
Pseudonymous?  ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

## 3

**a** YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED This information must be given in all cases.
2004    Year

**b** DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK Complete this information ONLY if this work has been published.
Month SEPTEMBER  Day 7  Year 2004
USA    Nation

## 4

See instructions before completing this space.

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼
MERCHANT MEDIA, LLC
10 CALIFORNIA AVENUE
FRAMINGHAM, MA 01701

**TRANSFER** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

APPLICATION RECEIVED
SEP 2 4 2004
ONE DEPOSIT RECEIVED
SEP 2 4 2004
TWO DEPOSITS RECEIVED

FUNDS RECEIVED

---

**MORE ON BACK ▶** • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.    DO NOT WRITE HERE

**\* Deposit is a motion picture.**

| EXAMINED BY | | FORM  PA |
|---|---|---|
| CHECKED BY | | |
| ☐ CORRESPONDENCE<br>Yes | | FOR<br>COPYRIGHT<br>OFFICE<br>USE<br>ONLY |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

---

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☐ Yes  ☒ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼ If your answer is No, do not check box A, B, or C.

a. ☐ This is the first published edition of a work previously registered in unpublished form

b. ☐ This is the first application submitted by this author as copyright claimant

c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: Previous Registration Number ▼                Year of Registration ▼

**5**

---

**DERIVATIVE WORK OR COMPILATION**  Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.

**Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates. ▼

**a**

   N/A

**Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**b**

   N/A

**6**

See instructions
before completing
this space

---

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

Name ▼                                                Account Number ▼

**a**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/ZIP ▼

  BRENDAN P. MCFEELY

  KANE KESSLER, P.C.

  1350 AVENUE OF THE AMERICAS
  NEW YORK, NY 10019

Area code and daytime telephone number  ( 212 ) 519-5188          Fax number  ( 212 )  245-3009

Email  bmcfeely@kanekessler.com

**b**

**7**

---

**CERTIFICATION\*** I, the undersigned, hereby certify that I am the

Check only one ▶

☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☒ authorized agent of   MERCHANT MEDIA, LLC

Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

BRENDAN P. MCFEELY                                    Date  SEPTEMBER 22, 2004

Handwritten signature (X) ▼

   x

**8**

---

Certificate
will be
mailed in
window
envelope
to this
address:

| Name ▼ |
|---|
| BRENDAN P. MCFEELY/ KANE KESSLER, P.C. |
| Number/Street/Apt ▼ |
| 1350 AVENUE OF THE AMERICAS |
| City/State/ZIP ▼ |
| NEW YORK, NY 10019 |

• Complete all necessary spaces
• Sign your application in space 8

SEND ALL 3 ELEMENTS
IN THE SAME PACKAGE:
1. Application form
2. Nonrefundable filing fee in check or money
   order payable to Register of Copyrights
3. Deposit material

Library of Congress
Copyright Office
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

**9**

---

\*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Exhibit G

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Form TX**
For a Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE

REG ▸

**TX 6-095-661**

EFFECTIVE DATE OF REGISTRATION

NOVEMBER 30, 2004

Month     Day     Year

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET**

## 1

**TITLE OF THIS WORK ▼**
Smart Spin website

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**PUBLICATION AS A CONTRIBUTION** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared      Title of Collective Work ▼

If published in a periodical or serial give      Volume ▼      Number ▼      Issue Date ▼      On Pages ▼

## 2

**a** **NAME OF AUTHOR ▼**
Merchant Media, LLC

**DATES OF BIRTH AND DEATH**
Year Born ▼      Year Died ▼

Was this contribution to the work a "work made for hire"?
☒ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▸ USA
Domiciled in ▸

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?      ☐ Yes  ☒ No
Pseudonymous?      ☐ Yes  ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed ▼
entire text, photographs, video *audiovisual material

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**b** **NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼      Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▸
Domiciled in ▸

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?      ☐ Yes  ☐ No
Pseudonymous?      ☐ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed ▼

**c** **NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼      Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▸
Domiciled in ▸

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?      ☐ Yes  ☐ No
Pseudonymous?      ☐ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed ▼

## 3

**a** **YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED**
2004      This information must be given ◂ Year in all cases.

**b** **DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK**
Complete this information ONLY if this work has been published.
Month ▸ September  Day ▸ 6  Year ▸ 2004
◂ Nation

## 4

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2 ▼
Merchant Media, LLC
10 California Avenue
Framingham, MA 01701

See instructions before completing this space

**TRANSFER** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright ▼

APPLICATION RECEIVED
NOV 2 2 2004    11/30/04
ONE DEPOSIT RECEIVED
NOV 2 2 2004    11/30/04
TWO DEPOSITS RECEIVED

FUNDS RECEIVED

DO NOT WRITE HERE
OFFICE USE ONLY

---

**MORE ON BACK ▸** • Complete all applicable spaces (numbers 5-9) on the reverse side of this page
• See detailed instructions      • Sign the form at line 8

DO NOT WRITE HERE
Page 1 of ___ pages

*Amended by CRO: *Proof email from Brendan P.
McFeely dated January 1, 2005.

Case 1:05-cv-0281-JES-MHD   Document 1   Filed 03/14/05   Page 50 of 50

| EXAMINED BY ~~JRP~~ | FORM TX |
|---|---|
| CHECKED BY | |
| ☐ CORRESPONDENCE Yes | FOR COPYRIGHT OFFICE USE ONLY |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☒ No If your answer is "Yes," why is another registration being sought? (Check appropriate box ) ▼

a ☐ This is the first published edition of a work previously registered in unpublished form

b ☐ This is the first application submitted by this author as copyright claimant

c ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: Previous Registration Number ▶          Year of Registration ▶

**5**

**DERIVATIVE WORK OR COMPILATION**
Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

N/A

**a**

Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed ▼

N/A

**b**

**6**

See instructions before completing this space.

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account
Name ▼                          Account Number ▼

**a**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent   Name/Address/Apt/City/State/ZIP ▼

Kane Kessler, P C / Brendan P  McFeely, Esq
1350 Avenue of the Americas
New York, NY 10019

Area code and daytime telephone number ▶  (212) 519–5188          Fax number ▶  (212) 245-3009
Email ▶  BMcFeely@kanekessler com

**b**

**7**

**CERTIFICATION*** I, the undersigned, hereby certify that I am the
Check only one ▶
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☒ authorized agent of  Merchant Media, LLC

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge

Name of author or other copyright claimant, or owner of exclusive right(s) ▲

**8**

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date

Brendan P  McFeely/ Kane Kessler, P C                          Date ▶ November 23, 2004

Handwritten signature (X) ▼

X _~~Brendan P McFeely~~_

| Certificate will be mailed in window envelope to this address: | Name ▼ Brendan P  McFeely/ Kane Kessler, P C |
|---|---|
| | Number/Street/Apt ▼ 1350 Avenue of the Americas |
| | City/State/ZIP ▼ New York, NY 10019 |

**YOU MUST**
• Complete all necessary spaces
• Sign your application in space 8
**SEND ALL 3 ELEMENTS IN THE SAME PACKAGE:**
1 Application form
2 Nonrefundable filing fee in check or money order payable to Register of Copyrights
3 Deposit material
**MAIL TO:**
Library of Congress
Copyright Office - TX
101 Independence Avenue  S E
Washington, D C  20559 6222

**9**

*17 U S C § 506(e) Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application shall be fined not more than $2 500