UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------x
                                 :
MERCHANT MEDIA, LLC and ALLSTAR
MARKETING GROUP, LLC,            :

                Plaintiffs,      :    REPORT & RECOMMENDATION

        -against-                :    05 Civ. 2817 (JES)(MHD)

H.S.M. INTERNATIONAL and HESH    :
MIRPURI,
                                 :
                Defendants.      :
---------------------------------x

**TO THE HONORABLE JOHN E. SPRIZZO, U.S.D.J.:**


    Plaintiffs Merchant Media, LLC and Allstar Marketing Group,

LLC, commenced this intellectual property lawsuit on March 14, 2005

against defendants H.S.M. International, Hesh Mirpuri, Media Brands

Worldwide Limited and Sanjay Mirpuri. Plaintiffs assert federal

claims against those defendants for patent infringement, unfair

competition, false designation of origin, and copyright

infringement, and state-law claims for unfair competition and

unjust enrichment. (See Compl. ¶ 1).


    Defendants failed to answer or otherwise respond to the

complaint although properly served. The District Court dismissed

two of the defendants -- Media Brands Worldwide Limited and Sanjay

Mirpuri -- and entered a default against defendants H.S.M.

1

International and Hesh Mirpuri. The Court then referred plaintiffs'
remaining claims to me to conduct an inquest and determine damages.

Plaintiffs seek statutory damages under the Copyright Act, and
lost profits under the Patent Act, or alternatively, under the
Lanham Act. They also request an award of attorney's fees and costs
against defendants under the Copyright Act and the Patent Act. For
the reasons that follow, we recommend that plaintiffs be awarded
$150,000.00 in statutory damages, $22,500.00 in attorney's fees,
and $4,139.31 in costs, jointly and severally against the two
remaining defendants. We further recommend that no lost-profits
award be made under either the Patent Act or the Lanham Act.

Procedural Background

At our pre-inquest conference, plaintiffs did not seek the
opportunity to pursue any discovery from the defaulted defendants,
but rather proposed to demonstrate their damages at that stage. We
authorized the plaintiffs to proceed by way of affidavit (see Order
dated Oct. 26, 2005), and on November 16, 2005, plaintiffs duly
submitted the required documents. Defendants, although given the
opportunity to respond (see id.), chose not to do so.

The Pertinent Facts

Defendants' default requires us to accept as true the well-pled allegations of the complaint that are pertinent to liability. See Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004); see also Chen v. Jenna Lane, Inc., 30 F.Supp.2d 622, 623 (S.D.N.Y. 1998); see generally Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). We therefore rely on these allegations and the additional evidentiary facts proffered by affidavit.

On July 1, 2003, the United States Patent and Trademark Office issued U.S. Patent No. 6,585,199 ("'199 Patent") to Mr. Saul Palder (Compl. ¶ 16), for what is described as a storage system for "multiple stacks of articles such as containers." (Compl., Ex. A). Merchant Media became the exclusive licensee of the '199 patent (Compl. ¶ 16), and joined with co-plaintiff Allstar Marketing Group in a joint venture and/or distributor-manufacturer relationship to develop and distribute a container storage system based on the '199 patent, under the brand SMART SPIN. (Compl. ¶ 24). Plaintiffs describe the patented product as a "'lazy [S]usan' type device that allows a consumer to store 'Tupperware' type containers in a neat, efficient and organized manner." (Pls.' Mem. 3).

Plaintiffs have used "SMART SPIN" as the trademark for the

3

patented storage system, and applied for trademark registration of both the SMART SPIN name (Serial No. 78/459,873, filed on July 30, 2004) and the SMART SPIN logo (Serial No. 78/551,071, filed on January 20, 2005). (See Compl. ¶ 19; Declaration of Adam M. Cohen for Default Judgment, executed July 22, 2005, Ex. G [hereinafter Cohen July Decl.]). They also developed original retail packaging for the product and own the copyright for the SMART SPIN box packaging (Registration No. Txu1-201-923, registered on December 15, 2004), which features the SMART SPIN trademark, photographs, and text describing the product and its characteristics (e.g., "49 Piece Storage System," "Keeps Leftovers Fresh," "Store *All* Your Containers & Lids in less than one square foot!"). (See Compl. ¶ 20; Declaration of Adam M. Cohen, executed Nov. 16, 2005, Ex. C [hereinafter Cohen Nov. Decl.]).

To promote and market the SMART SPIN storage system, plaintiffs expended approximately $10 million on nationwide television advertising. (Affidavit of Michael Antino, sworn to Nov. 15, 2005, at ¶ 2). As part of this effort, they produced a SMART SPIN television commercial, for which they registered the copyright (Registration No. PA 1-251-859, registered on September 24, 2004). (Cohen Nov. Decl., Ex. D). The commercial is a two-minute advertisement for the SMART SPIN brand storage system, including script, video, and graphics that show the product and its functions (e.g., "Its unique patented design slides forward," "Smart Spin

conveniently holds all your storage needs.") (<u>See</u> Compl. ¶ 22;
Cohen Nov. Decl., Ex. D).

Plaintiffs also spent approximately $1.5 million on
advertising in other media, such as the Internet, and they hold the
copyright for the SMART SPIN Website (Registration No. TX 6-095-
661, registered on November 30, 2004). (Antino Aff. ¶ 2; Cohen Nov.
Decl., Ex. E). The website, hosted at http://www.smartspin.com,
contains original artwork and advertising copy presenting images
and descriptions of the advantages of the product (<u>e.g.</u>, "Smart
Spin conveniently holds all your storage needs, right at your
fingertips," "Organize ALL your storage NEEDS in less than 1 square
foot!"). (<u>See</u> Compl. ¶ 21; Cohen Nov. Decl., Ex. E).

Since introducing the SMART SPIN storage system into the
market in December 2004, plaintiffs have sold approximately 6.5
million units of the product. These sales have generated
approximately $23 million in net profits before taxes. (Antino Aff.
¶ 4).

Following the successful launch of the SMART SPIN storage
system, and without seeking plaintiffs' consent, defendants began
to promote and sell their own product, which is identical to
plaintiffs' patented storage system and bears the trademarks "Smart
Spin," "Spin Express," and/or "Spin 'N' Store." (Compl. ¶¶ 25-28;

5

Cohen Nov. Decl., Exs. F-L). Defendants advertised their infringing product by commencing a mass unsolicited e-mail campaign. (Antino Aff. ¶ 3). These e-mails contained substantial amounts of text and photographs that were virtually identical to plaintiffs' copyrighted photographs and text-based marketing materials. (Compare Cohen Nov. Decl., Exs. F-L with Cohen Nov. Decl., Exs. C-E).

On January 21 and 27, 2005, plaintiffs sent defendants cease-and-desist letters. (See Cohen July Decl. ¶ 11 & Ex. H). Defendants apparently ignored these warnings and continued to make use of the infringing promotional material to market the infringing product. (See Affidavit of Stu Berger, sworn to July 19, 2005, at ¶¶ 5-8 & Exs. C-F; Affidavit of Sean Cohen, sworn to July 19, 2005, at ¶ 2; Cohen Nov. Decl., Exs. I-L).

<u>ANALYSIS</u>

I.   <u>Assessment of Plaintiffs' Damages</u>

Plaintiffs seek statutory damages under the Copyright Act and lost profits under either the Patent Act or the Lanham Act. We address these theories <u>seriatim</u>.

A.   <u>Statutory Damages under the Copyright Act</u>

Plaintiffs claim that their copyrights were infringed by defendants. (Compl. ¶¶ 49, 51, 53, 54). They further allege that defendants acted willfully in persistently infringing those copyrights despite ample warnings to stop their misconduct. (<u>See</u> Pls.' Mem. 10, 17). Accordingly, plaintiffs seek statutory damages of $50,000.00 per infringement for three copyrights, for a total of $150,000.00 pursuant to 17 U.S.C. § 504(c). (<u>Id.</u> at 8).

1.   <u>Legal Criteria</u>

As an alternative to an award of lost profits or the infringer's profits, the Copyright Act permits the copyright owner to opt for an award of statutory damages of between $750.00 and $30,000.00 for each infringed work. <u>See</u> 17 U.S.C. § 504(c)(1). Moreover, if the plaintiff demonstrates that the "infringement was committed willfully," the court in its discretion may increase the award to as much as $150,000.00. § 504(c)(2).

"A key reason for the alternative statutory damage provision is so that a copyright owner will not be prevented from a recovery simply because actual amounts may not be ascertainable due to an infringer's success in hiding records of its illegal activities." <u>Schwartz-Liebman Textiles v. Last Exit Corp.</u>, 815 F.Supp. 106, 108

(S.D.N.Y. 1992) (<u>citing</u> <u>inter</u> <u>alia</u> <u>F.W. Woolworth Co. v. Contemporary Arts, Inc.</u>, 344 U.S. 228, 233 (1952)). It follows that an award of statutory damages will not depend upon a rigorous showing by a plaintiff of the extent of the defendant's profits. <u>See</u> <u>Lauratex Textile Corp. v. Allton Knitting Mills, Inc.</u>, 519 F.Supp. 730, 733 (S.D.N.Y. 1981). Nonetheless, courts have broad discretion in determining the size of an award, <u>see</u>, <u>e.g.</u>, <u>Fitzgerald Publ'g Co. v. Baylor Publ'g Co.</u>, 807 F.2d 1110, 1116 (2d Cir. 1986); <u>NFL v. Primetime 24 Joint Venture</u>, 131 F.Supp.2d 458, 472-73 (S.D.N.Y. 2001), and may require plaintiffs to offer evidence that sheds light on the facts pertinent to such an award. <u>See</u>, <u>e.g.</u>, <u>Peer Int'l Corp. v. Max Music & Entm't, Inc.</u>, 2004 WL 1542253, at *4 (S.D.N.Y. July 9, 2004); <u>Boisson v. Banian Ltd.</u>, 280 F.Supp.2d 10, 17-19 (E.D.N.Y. 2003).

As for the governing standards, the assessment of statutory damages is guided by a variety of considerations beyond simple compensation, including the need for deterrence and punishment and the degree of culpability in the infringing conduct. <u>See</u>, <u>e.g.</u>, <u>Fitzgerald</u>, 807 F.2d at 1117; <u>Arclightz & Films Pvt., Ltd. v. Video Palace, Inc.</u>, 303 F.Supp.2d 356, 362 & n.37 (S.D.N.Y. 2003) (discussing factors courts consider when assessing amount of damages award); <u>NFL</u>, 131 F.Supp.2d at 473-74 (same). Thus, the degree of blameworthiness or willfulness on the part of defendants influences the size of the award, even if it ultimately remains

8

below $30,000.00 per infringed work, and willful infringement can trigger a significantly higher potential maximum award. <u>See</u> 17 U.S.C. § 504(c)(2); <u>Fitzgerald</u>, 807 F.2d at 1116-17; <u>NFL</u>, 131 F.Supp.2d at 475-82.

2.   <u>Willfulness of Defendants</u>

Plaintiffs seek an award that reflects willfulness on the part of defendants. Acting 'willfully' means acting with knowledge that one's actions constitute copyright infringement. <u>Fitzgerald</u>, 807 F.2d at 1115. Plaintiffs need not, however, demonstrate that the defendants actually knew at the time that their conduct was infringing, since constructive knowledge or even recklessness may evidence willfulness. <u>See</u>, <u>e.g.</u>, <u>N.A.S. Import, Corp. v. Chenson Enters., Inc.</u>, 968 F.2d 250, 252 (2d Cir. 1992); <u>Arclightz</u>, 303 F.Supp.2d at 361-62 ("To prove willfulness, plaintiffs must show that the infringer had actual or constructive knowledge that it was infringing the plaintiffs' copyrights or else acted in reckless disregard of the high probability that it was infringing plaintiffs' copyrights.").

In this case, the willfulness of the defendants may be inferred from their failure to appear and defend this action. <u>See</u>, <u>e.g.</u>, <u>Tiffany (NJ) Inc. v. Luban</u>, 282 F.Supp.2d 123, 124 (S.D.N.Y. 2003); <u>Fallaci v. New Gazette Literary Corp.</u>, 568 F.Supp. 1172,

9

1173 (S.D.N.Y. 1983). Moreover, the fact that defendants continued to sell the infringing items in the face of two cease-and-desist letters from plaintiffs strongly suggests the willfulness of their conduct. See, e.g., N.A.S. Import, 968 F.2d at 253; Int'l Korwin Corp. v. Kowalczyk, 855 F.2d 375, 380-81 (2d Cir. 1988); Etna Prods. Co. v. Q Mktg. Group, Ltd., 2004 WL 1769794, at *14 (S.D.N.Y. Aug. 6, 2004).

In short, the record adequately demonstrates defendants' willfulness.

### 3.  The Statutory Damages Award

Defendants' unsolicited e-mails infringed plaintiffs' copyrighted works. The unsolicited e-mail campaign by defendants contained substantial amounts of text and photographs that were exactly the same as, and seemed to be 'copied and pasted' from, plaintiffs' copyrighted photographs and text-based marketing materials. (Cohen Nov. Decl., Exs. C, E-J; Compl., Exs. B-D).

Plaintiffs offer no evidence concerning the value of the copyright, other than the undocumented statement that, over an unspecified period of time, the total sales of the patented product totaled twenty-three million dollars. Plaintiffs also offer no evidence about the revenues or profits that defendants made by

infringing plaintiffs' copyrighted material, although we infer that specific data on defendants' costs and revenues was unavailable as a result of defendants' default in this case. Plaintiffs do proffer several unsolicited e-mails sent by defendants to various unrelated persons in the United States on six separate dates, offering the pirated products. (Cohen Nov. Decl., Exs. F-L). Based on this showing, we agree with plaintiffs' inference that defendants widely distributed the infringing materials by "spam" e-mail in order to solicit business.

Taking into account the culpability of defendants and the fact that the type of infringement for which they were responsible was apparently more than a small-scale business practice,[1] we conclude that an award of statutory damages of $50,000.00 per infringement is appropriate both to punish plainly deliberate infringing conduct and to deter future violations by defendants and by others. See, e.g., Webloyalty.com, Inc. v. Consumer Innovations, LLC, 388 F.Supp.2d 435, 443 (D. Del. 2005) (awarding statutory damages of $25,000 per copyrighted work where defendant's infringing activity consisted of wholesale copying of plaintiff's online marketing materials); NFL, 131 F.Supp.2d at 479-80 (awarding $100,000 per infringement for each of eighteen transmissions of copyrighted NFL

---

[1]    HSM International's own website states: "HSM International is a well-established manufacturing and export company . . . It occupies an area of 20,000 sq ft. It consists of well equipped machineries and about 800 workers." (Cohen Nov. Decl., Ex. M).

game telecasts); <u>Eastern Am. Trio Products, Inc. v. Tang Elec. Corp.</u>, 97 F.Supp.2d 395, 419 (S.D.N.Y. 2000) (awarding $12,500 per infringed photograph after defendant copied photographs from plaintiff's sales catalog and used them in defendant's own sales catalog); <u>Fitzgerald Publ'g Co. v. Baylor Publ'g Co.</u>, 670 F.Supp. 1133, 1138-41 (E.D.N.Y 1987) (awarding plaintiff $220,870 in enhanced statutory damages where defaulting infringer's failure to appear contributed to the dearth of evidence available and made calculation of profits impossible), <u>aff'd</u>, 862 F.2d 304 (2d Cir. 1988).

Although there is an overlap between plaintiffs' three copyrighted works, each work is separately copyrighted and counts as a separate copyright for calculating statutory damages. <u>See</u> <u>Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.</u>, 996 F.2d 1366, 1381 (2d Cir. 1993). Since each of plaintiffs' three copyrighted works was infringed, we recommend that plaintiffs be awarded statutory damages totaling $150,000.00.

B.   <u>Damages under the Patent Act</u>

Plaintiffs also claim that defendants infringed their rights under the '119 Patent. Pursuant to the Patent Act, 35 U.S.C. § 284, they request that the Court award them $184,000.00 in lost profits.

1.   <u>Standing to Sue</u>

Under the Patent Act, a "patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281. The term "patentee" includes "not only the patentee to whom the patent was issued but also the successors in title to the patentee," 35 U.S.C. § 100, and accordingly, if a patent owner transfers "all substantial rights under the patent" to an assignee, that assignee has constitutional standing to commence an action for patent infringement. <u>See</u>, <u>e.g.</u>, <u>Sicom Sys. Ltd. v. Agilent Techs., Inc.</u>, 427 F.3d 971, 976 (Fed. Cir. 2005). Unlike an assignee, a licensee normally does not have standing to sue an infringer without joinder of the patent owner, but an exclusive licensee will be treated like an assignee and have standing to sue if the exclusive license conveys all substantial rights to the patent to the licensee. <u>See</u>, <u>e.g.</u>, <u>Aspex Eyewear, Inc. v. Miracle Optics, Inc.</u>, 434 F.3d 1336, 1340 (Fed. Cir. 2006); <u>Sicom Sys.</u>, 427 F.3d at 976.

To ascertain whether parties intended to convey all substantial rights to an exclusive licensee, courts examine the substance and terms of the licensing agreement. <u>See</u>, <u>e.g.</u>, <u>Aspex Eyewear</u>, 434 F.3d at 1340; <u>Textile Prods., Inc. v. Mead Corp.</u>, 134 F.3d 1481, 1484 (Fed. Cir. 1998). The types of rights that courts have determined strongly indicate that an exclusive license grants "all substantial rights," thereby allowing the exclusive licensee

13

to sue for infringement, include "(1) the exclusive right to make, use, and sell products covered by the patent; (2) the right to sue for infringement of the patent; and (3) . . . [the right of the licensee] to sublicense its rights under the agreement." Aspex Eyewear, 434 F.3d at 1342; see generally Sicom Sys., 427 F.3d at 976-80 (gathering and discussing cases and analyzing parties' agreement).

Plaintiff Merchant Media ("MMC") is the exclusive licensee of the '119 Patent. (Compl. ¶ 16 & Ex. A; Cohen July Decl., Exs. D, E). The licensing agreement between MMC and the patent owner transfers several rights "on an exclusive worldwide basis" to MMC, including: (1) the "rights to promote, market, sell, and otherwise distribute" the products covered by the '119 Patent ("the Products") (Cohen July Decl., Ex. E at ¶ 1(a)(1)); (2) the rights to manufacture "and in connection therewith, to develop and modify the Products and their underlying design in such manner as MMC, in its sole judgment, may deem necessary in order to effectively and economically manufacture and [p]romote the Products" (id., Ex. E at ¶ 1(a)(2)); and (3) the "right to sublicense any and all of the License Rights to such third party or parties as MMC, in its reasonable judgment, may deem appropriate." (Id., Ex. E at ¶ 1(a)(4)). In addition, the agreement conveys to MMC the right to "enforce or defend" the patent owner's intellectual property rights if the patent owner declines to do so, (id., Ex. E at ¶ 7(a)(3)),

14

and the patent owner specifically authorized MMC to sue for infringement in this action. (See id., Ex. F). Further, the patent owner reserved only limited rights for itself, which do not include the right to offer additional sublicenses, or to veto MMC's assignments, or to grant contracts. (See id., Ex. E). The terms of the exclusive licensing agreement thus lead to the conclusion that "all substantial rights" were conveyed to plaintiff Merchant Media, and that plaintiff is thus entitled to sue for patent infringement and seek relief under the Patent Act. See, e.g., Sicom Sys., 427 F.3d at 977-78; Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A., 944 F.2d 870, 875 (Fed. Cir. 1991); Textile Prods., 134 F.3d at 1484-85.


    2.   Calculation of Damages


    The Patent Act dictates that damage awards for patent infringement must be "adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer," plus interest and costs. 35 U.S.C. § 284. Plaintiffs bear the burden to prove the amount of damages. See Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co., 425 F.3d 1366, 1372 (Fed Cir. 2005) (quoting SmithKline Diagnostics, Inc. v. Helena Lab. Corp., 926 F.2d 1161, 1164 (Fed. Cir. 1991)); see also SEB, S.A. v. Montgomery Ward & Co., Inc., 412 F.Supp.2d 336, 345 (S.D.N.Y. 2006).

15

(a). <u>Lost Profits</u>

An acceptable measure for calculating damages is the profits plaintiff lost as a result of the infringement. <u>See</u> <u>Hanson v. Alpine Valley Ski Area, Inc.</u>, 718 F.2d 1075, 1078 (Fed. Cir. 1983); <u>Etna Prods.</u>, 2004 WL 1769794, at *12. To show lost profits, the patent holder ("the patentee") must establish that there was a reasonable probability that "but for" the patent infringement, the patentee would have made the additional sales and profits enjoyed by the infringer. <u>See</u>, <u>e.g.</u>, <u>Micro Chem., Inc. v. Lextron, Inc.</u>, 318 F.3d 1119, 1122 (Fed. Cir. 2003) (<u>citing</u> <u>King Instruments Corp. v. Perego</u>, 65 F.3d 941, 952 (Fed. Cir. 1995)).

There is no particular method a patentee must use to prove "but for" causation, and the "methodology of assessing and computing damages is committed to the sound discretion of the district court." <u>King Instruments</u>, 65 F.3d at 952 (<u>quoting</u> <u>State Indus., Inc. v. Mor-Flo Indus., Inc.</u>, 883 F.2d 1573, 1576-77 (Fed. Cir. 1989)). While "courts have given patentees significant latitude to prove and recover lost profits," <u>Grain Processing Corp. v. Am. Maize-Prods. Co.</u>, 185 F.3d 1341, 1350 (Fed. Cir. 1999), patentees must still use a method that shows "with reasonable probability" their entitlement to the asserted lost profits. <u>Micro Chem.</u>, 318 F.3d at 1122. Thus, whichever test is ultimately used, the general rule is that "damages may not be determined by mere

16

speculation or guess." <u>Story Parchment Co. v. Paterson Parchment Paper Co.</u>, 282 U.S. 555, 563 (1931). As a result, even though the "but for" analysis requires the "hypothetical enterprise" of reconstructing the market as it would have been absent the infringing product to determine what profits the patent owner lost, courts insist that plaintiffs provide "sound economic proof" as to how they were affected by the infringement so as to "prevent the hypothetical from lapsing into pure speculation." <u>Grain Processing</u>, 185 F.3d at 1350. In sum, although the risk of uncertainty should be borne by the infringer, patentees must offer enough evidence of the extent of their damages for courts, as a matter of just and reasonable inference, to make at least a fair approximation of their injuries. <u>See</u> <u>Lam, Inc. v. Johns-Manville Corp.</u>, 718 F.2d 1056, 1065 (Fed. Cir. 1983) (<u>citing</u> <u>Story Parchment</u>, 282 U.S. at 563).

One recognized method for assessing causation between the infringing act and the patentee's lost profits is the <u>Panduit</u> test, <u>see</u> <u>Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.</u>, 575 F.2d 1152, 1156 (6th Cir. 1978), under which the patentee must show: (1) demand for the patented product; (2) a lack of acceptable non-infringing substitute products; (3) the capacity of the patentee to meet the demand; and (4) the amount of profits the patentee would have earned but for the infringement. <u>See</u>, <u>e.g.</u>, <u>Fonar Corp. v. Gen. Elec. Co.</u>, 107 F.3d 1543, 1553 (Fed. Cir. 1997)(<u>citing</u>

Panduit, 575 F.2d at 1156)).   While the Panduit test is not an exclusive test for determining "but for" causation as to lost profits, see, e.g., Comair Rotron, Inc. v. Nippon Densan Corp., 49 F.3d 1535, 1540 (Fed.Cir. 1995); Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1548 (Fed. Cir. 1995), it provides helpful guidelines as to the type of economic proof plaintiffs should offer to courts conducting the "but for" analysis. See, e.g., Micro Chem., 318 F.3d at 1122-25; Gargoyles, Inc. v. United States, 113 F.3d 1572, 1575-79 (Fed. Cir. 1997).

        In view of the proffered evidence, there is no dispute that defendants mimicked the "SMART SPIN" storage system and infringed plaintiffs' patent. The counterfeit is so similar to the patented product that defendants could use plaintiffs' own advertisements to market their fake copies. (Compare Cohen Nov. Decl., Exs. F-L with Cohen Nov. Decl., Exs. C-E). Plaintiffs present no further evidence, however, about the scope of defendants' sales of the infringing products and how or whether such sales affected plaintiffs' own market share. Rather, plaintiffs engage in broad speculation about the extent of defendants' activity based on extremely scant evidence -- for example, they conclude that defendants sent "literally millions" of advertising e-mails, based on plaintiffs' knowledge of six such e-mails. (See Pls.' Mem. 5). Indeed, the only concrete evidence they offer is a single jocular remark by one customer -- "[L]ooks like I should buy this direct

instead of from Harvest!!!" (Cohen Nov. Decl., Ex. G; <u>see</u> <u>also</u>
Pls.' Mem. 14) -- and two orders made by separate companies for
samples of the infringing product. (Sean Cohen Aff. ¶ 2; Berger
Aff. ¶¶ 2-6).

Plaintiffs also make no attempt to use the <u>Panduit</u> test or any
other method to show "but for" causation between the defendants'
infringement and plaintiffs' lost profits, and instead estimate --
without providing any basis or explanation for how they arrived at
their estimation -- that they "have lost approximately 8 to 10
percent of [their] profits on SMART SPIN from infringing activity,"
for a total loss of between $1,840,000 to $2,300,000. (Antino Aff.
¶ 5; <u>see</u> <u>also</u> Pls.' Mem. 14). They also fail to provide any
information as to what percentage of the "infringing activity" is
fairly attributable to defendants. They seem to rely solely on the
*possibility* that some of their potential costumers might have
purchased the infringing product instead of the patented one, but
they fail to show that any of their potential customers actually
did so.

Plaintiffs also assert that, because of price pressure from
competing infringers -- including defendants and "others" -- they
were forced to reduce the price of the patented product by $0.30
per unit for the last 333,000 units sold to big box retailers,
thereby incurring a reduction in revenues of $100,000.00. (<u>See</u>

Antino Aff. ¶ 6; <u>see</u> <u>also</u> Pls.' Mem. 15). They proffer no evidence, however, to demonstrate that the price reduction resulted from sales of the infringing product, much less that those sales were by defendants as opposed to "others."

We recognize that defendants' default makes it difficult for plaintiffs to obtain defendants' sales record. Plaintiffs, however, still have to prove their damages and establish that they are entitled to recovery. <u>See</u>, <u>e.g.</u>, <u>Oiness v. Walgreen Co.</u>, 88 F.3d 1025, 1029 (Fed. Cir. 1996); <u>see</u> <u>also</u> <u>Greyhound Exhibitgroup, Inc.</u> <u>v. E.L.U.L. Realty Corp.</u>, 973 F.2d 155, 158-59 (2d Cir. 1992) (observing that "[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages" and that plaintiffs must establish the damages proximately caused by defendants' wrongful acts). We assume that plaintiffs could have developed at least some information about defendants' retail operation, and more importantly, could have documented a drop in their own sales volume and revenues during the pertinent period as compared to prior years. They have not even attempted to do so, and merely offer speculative and conclusory assertions as to the amount of their revenues in an unspecified time period and a percentage reduction in total sales attributable to infringements by unspecified parties. Given the absence of underlying data or any meaningful analysis, we conclude that plaintiffs have not made the required

evidentiary showing to sustain a lost-profits award under the Patent Act. See, e.g., Oiness, 88 F.3d at 1029-30 (reversing a lost-profits award after concluding that plaintiff's evidence added "vague estimation and gross extrapolation to unsupported presumption" and that "[i]nstead of presenting evidence of actual sales combined with reliable economic analysis of demand, supply, and price over time," plaintiff provided a damages calculation "fraught with speculation").

(b). Reasonable Royalty

Even though plaintiffs are unable to show lost profits, they are entitled to "damages adequate to compensate for the infringement" in an amount no less than "a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284; see, e.g., Riles v. Shell Exploration & Prod. Co., 298 F.3d 1302, 1311 (Fed. Cir. 2002) ("The [Patent Act] guarantees patentees a reasonable royalty even when they are unable to prove entitlement to lost profits . . . ."); Hanson, 718 F.2d at 1078. When patentees are unable to prove an established royalty rate, courts often determine a reasonable royalty by contemplating a "hypothetical negotiation between the patentee and the infringer at a time before the infringement began." Riles, 298 F.3d at 1311; see Rite-Hite Corp., 56 F.3d at 1554; Hanson, 718 F.2d at 1079. Such an analysis "necessarily involves some approximation of the market as it would

have hypothetically developed absent infringement," which in turn "requires sound economic and factual predicates." Riles, 289 F.3d at 1311.

In this case, plaintiffs provided no evidence to assist the Court in determining what a reasonable royalty would be. The only document in the record that could conceivably be relevant in calculating a reasonable royalty is the license agreement between plaintiffs and the patent owner. (See Cohen July Decl., Ex. E). The relevant portion of the agreement is redacted, however, and thus information as to any royalty rate that may have been established is unavailable. (See id., Ex. E at ¶ 3).

Plaintiffs have thus presented insufficient evidence for the Court to determine a damages award for patent infringement based on either lost profits or an established royalty rate. Nonetheless, in determining what a "reasonable royalty" would be, we may exercise a "common-sense estimation of what the evidence shows would be a 'reasonable' award." Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co., 895 F.2d 1403, 1406 (Fed. Cir. 1990). Here, we find that the damages award of $150,000.00 already assessed in favor of plaintiffs[2] suffices to provide adequate compensation for the infringement. See id. at 1407-08 (concluding that $10,000.00 was an adequate award under a "reasonable royalty" measure where

---

[2] See supra p. 12.

22

plaintiffs provided "little or no satisfactory evidence" as to what a reasonable royalty rate would be); cf. Devex Corp. v. Gen. Motors Corp., 667 F.2d 347, 363 (3rd Cir. 1981) (affirming a zero damages award based on "the absence of any evidence from which a court may derive a reasonable royalty"), aff'd on other grounds, 461 U.S. 648 (1983). In addition, the Court should deny plaintiffs' claim for enhanced damages under 35 U.S.C. § 284, in light of both plaintiffs' sparse evidence as to the economic impact of defendants' patent infringement and the fact that defendants' willfulness and bad faith have already been reflected in the current damages award. See Modine Mfg. Co. v. Allen Group, Inc., 917 F.2d 538, 543 (Fed. Cir. 1990) (noting that "a finding of willful infringement merely authorizes, but does not mandate, an award of increased damages").


C.   Damages under the Lanham Act


Plaintiffs suggest that if the Court refuses to award $184,000.00 in enhanced lost profits under the Patent Act, it should do so under the Lanham Act. We disagree.


1.   Legal Criteria


Although there is very little caselaw on the subject, a plaintiff may be entitled to both statutory damages under the

Copyright Act and lost profits pursuant to the Lanham Act if the defendant violated both plaintiff's copyright and plaintiff's trademark. <u>See</u>, <u>e.g.</u>, <u>Microsoft Corp. v. Black Cat Computer Wholesale, Inc.</u>, 269 F.Supp.2d 118, 123 (W.D.N.Y. 2002) (<u>citing Nintendo of Am., Inc. v. Dragon Pac. Int'l</u>, 40 F.3d 1007, 1011 (9th Cir. 1994)). To justify awards under both statutes and prevent double recovery, a plaintiff must demonstrate that these two types of compensation would serve different purposes. <u>See Viacom Int'l Inc. v. Fanzine Int'l, Inc.</u>, 2001 WL 930248, at *5 (S.D.N.Y. Aug. 16, 2001); <u>Lyons P'ship, L.P. v. AAA Entm't Inc.</u>, 1999 WL 1095608, at *10 (S.D.N.Y. Dec. 3, 1999); <u>cf. Sparaco v. Lawler, Matusky, Skelly Eng'rs LLP</u>, 313 F.Supp.2d 247, 253-55 (S.D.N.Y. 2004) (finding that the key issue in potential double-recovery cases involving the Copyright Act and Lanham Act is whether separate damage awards would compensate plaintiff for different injuries).

In this case, the award of statutory damages under the Copyright Act is designed to penalize defendants and deter future violations by defendants and others. An award of lost profits under the Lanham Act, on the other hand, would serve to compensate plaintiffs for the injuries they suffered as a result of defendants' infringement. <u>See</u> 15 U.S.C. § 1117(a) (stating that an award under the statute "shall constitute compensation and not a penalty"); <u>Lyons</u>, 1999 WL 1095608, at *10; <u>see also Nintendo</u>, 40 F.3d at 1011 (observing that actual damages under the Lanham Act

24

serve to compensate plaintiffs and prevent defendants' unjust enrichment). Thus, an award of both statutory damages and lost profits under the two statutes would be permissible. See Brown v. Party Poopers, Inc., 2001 WL 1380536, at *5-6 (S.D.N.Y. July 9, 2001); Viacom, 2001 WL 930248, at *5.

Under the Lanham Act, a plaintiff who successfully establishes a trademark violation is entitled to recover defendant's profits, damages sustained by the plaintiff, and the costs of the action. 15 U.S.C. § 1117(a). To be awarded profits under the Lanham Act, plaintiffs must show that an infringer acted with willful deception, in addition to showing (1) the defendant's unjust enrichment; (2) the plaintiff's damages from the infringement; or (3) that an accounting for profits is necessary to deter future willful infringement. George Basch Co. v. Blue Coral, Inc., 968 F.2d 1532, 1537 (2d Cir. 1992); see also Gidatex, S.r.L. v. Campaniello Imps., Ltd., 82 F.Supp.2d 136, 141 (S.D.N.Y. 2000).

Along with showing defendant's willful deception, the plaintiff must prove defendant's sales in order to recover defendant's profits. See 15 U.S.C. § 1117(a); Basch, 968 F.2d at 1539; Ahava (USA), Inc. v. J.W.G., Ltd., 286 F.Supp.2d 321, 324 (S.D.N.Y. 2003); Gidatex, 82 F.Supp.2d at 141-42. Similarly, to recover their own damages, including lost profits, see Basch, 968 F.2d at 1540 (observing that plaintiff's lost profits "have been

25

traditionally compensable as an element of plaintiff's damages"), plaintiffs are required to prove with some specificity what their actual damages are. See, e.g., PPX Enters. v. Audiofidelity Enters., 818 F.2d 266, 271 (2d Cir. 1987) (noting that "the quantum of damages, as distinguished from entitlement, must be demonstrated with specificity"). Some reasonable basis of computation has to be used, even though the proof may be only approximate. See GTFM, Inc. v. Solid Clothing, Inc., 215 F.Supp.2d 273, 305 (S.D.N.Y. 2002).

2.   Lost Profits Award

Plaintiff Merchant Media applied for registration of the SMART SPIN and Design Trademark (Serial No. 78/551,071) and the SMART SPIN Trademark (Serial No. 78/459,873) prior to defendants' infringing activity.[3] (Compl. ¶ 19; Cohen July Decl., Ex. G; see also Pls.' Mem. 4). Plaintiffs have asserted that defendants used plaintiffs' trademark in advertising, marketing, and packaging their infringing products without plaintiffs' authorization. (Compl. ¶¶ 38-40; Cohen Nov. Decl., Exs. F, G, I, J; Sean Cohen Aff. ¶ 2 & Ex. C; see also Pls.' Mem. 7-8). Although plaintiffs have sufficiently established defendants' liability for infringement, they simply rely on their general assertion that they should receive an award of $184,000.00 pursuant to the Lanham Act

---

[3] The SMART SPIN and Design trademark was subsequently registered on September 20, 2005; the SMART SPIN trademark application for registration remains pending. (Pls.' Mem. 4).

without providing any evidence to support their contention that this figure represents either the injuries they sustained or defendants' profits.

As previously observed, defendants' default greatly impeded plaintiffs' ability to obtain discovery, "but such difficulties cannot serve to relieve the necessity for reasonable certainty in discharging the burden of proof resting upon the complainant." McIlhenny Co. v. Bulliard, 33 F.2d 978, 980 (W.D.La. 1928); see Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997). Plaintiffs must demonstrate that defendants' infringing conduct had some effect on their own sales or otherwise caused plaintiffs economic harm. See, e.g., Burndy Corp. v. Teledyne Indus., Inc., 748 F.2d 767, 771-73 (2d Cir. 1984). At the very least, plaintiffs could probably have offered some evidence about whether defendants' marketing efforts bore some economic fruit.

In sum, in the current evidentiary vacuum, there is no basis to award plaintiffs any damages under the Lanham Act.[4] See, e.g., Gitadex, 82 F.Supp.2d at 141-42 (concluding that the evidentiary record did not support an award of profits since plaintiffs failed to demonstrate lost sales and merely showed defendant's intent to

---

[4] Plaintiffs do not seek any other compensation under the Lanham Act, but do seek costs under the Patent Act and Copyright Act, which we address below. See infra pp. 29-31.

divert sales); <u>see</u> <u>also</u> <u>Burndy</u>, 748 F.2d at 771-74; <u>Ahava</u>, 286 F.Supp.2d at 324.

II.  <u>Attorney's Fees and Costs</u>

    Plaintiffs seek attorney's fees and costs under the Copyright Act and the Patent Act. We begin our analysis by addressing plaintiffs' copyright claim.

    In a copyright infringement action, the court in its discretion may grant the prevailing party reasonable attorney's fees as part of the costs. <u>See</u> 17 U.S.C. § 505. According to the guidelines generally recognized by the federal courts, the objective reasonableness of the non-prevailing party's position is a central consideration. <u>See</u>, <u>e.g.</u>, <u>Matthew Bender & Co. v. West Publ'g Co.</u>, 240 F.3d 116, 121-22 (2d Cir. 2001) (reviewing cases); <u>Caffey v. Cook</u>, 409 F.Supp.2d 484, 509 (S.D.N.Y. 2006). Additional factors for consideration include "frivolousness, motivation . . . and the need in particular circumstances to advance considerations of compensation and deterrence." <u>Fogerty v. Fantasy, Inc.</u>, 510 U.S. 517, 535 n.19 (1994); <u>accord</u> <u>Crescent Publ'g Group, Inc. v. Playboy Enters.</u>, 246 F.3d 142, 147 (2d Cir. 2001).

    The record created by plaintiffs reflects that defendants used exact copies of the copyrighted works to market their infringing

products. Since defendants defaulted, we necessarily cannot conclude that their position was objectively reasonable. Moreover, there are no factors in the present case that would justify denying an award, such as "the presence of complex or novel issues, a defendant's innocent state of mind, or prosecution of the case in bad faith." Broadcast Music v. R Bar, 919 F.Supp. 656, 661 (S.D.N.Y. 1996); see NFL, 131 F.Supp.2d at 485-86. Thus, the evidentiary record, including the strong evidence of defendants' willfulness and the need for deterrence, fully justify an award of fees. See, e.g., Kepner-Tregoe, Inc. v. Vroom, 186 F.3d 283, 289 (2d Cir. 1999) (affirming the district court's award of attorney's fees in light of the defendant's willful infringement and the statutory goal of deterrence).

Plaintiffs' counsel represents that he spent 60 hours at hourly rates of $390.00 and that another attorney spent 162.7 hours at hourly rates of $185.00, generating fees totaling $53,499.50. (Cohen Nov. Decl., Ex. A). After reductions of $3,500.00 -- apparently reflecting a "Courtesy Discount" -- and $5,000.00 allocable to legal work relating solely to the two defendants that were dismissed by the Court, plaintiffs ask for $45,000.00 in fees against the two defaulted defendants. (Cohen Nov. Decl. ¶¶ 3, 4 & Ex. A). Plaintiffs also seek to recover disbursements in the amount

of $4,139.31. (Id. at ¶ 5).[5]

Measurement of a fee award should normally be done by way of a lodestar analysis, which requires a calculation based on the amount of time reasonably required to do the job and a reasonable hourly fee. See Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992). In performing this assessment, we look to the amount of work, the skills of the attorneys, and the results achieved. See, e.g., Arclightz, 303 F.Supp.2d at 364 (citing N.A.S. Import, 968 F.2d at 254). In this regard, courts must keep in mind that an award of attorneys' fees should bear some relationship to the level of success achieved, and therefore awards should be adjusted to the extent that certain claims are unsuccessful or less successful or that plaintiffs receive only limited relief. See Hensley v. Eckerhart, 461 U.S. 424, 438-40 (1983).

In this case, plaintiffs' counsel failed to justify relief on their patent and trademark claims beyond that which is to be awarded on their copyright claim, since they failed to prove their actual damages or their entitlement to enhanced damages under the Patent Act or Lanham Act. In view of this limited success, the full amount of $45,000.00 is excessive and should not be awarded. See,

---

[5] Plaintiffs represent that the documented costs total $4,575.31. The difference between the total and the amount plaintiffs seek to recover is allocable to the dismissed defendants. (Cohen Nov. Decl. ¶ 5).

e.g., Kassim v. City of Schenectady, 415 F.3d 246, 253-54 (2d Cir. 2005) ("[W]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." (citing Hensley, 461 U.S. at 440)). Instead, attorney's fees should be awarded based on their success on their copyright claim. See Branch v. Ogilvy Mather, Inc., 772 F.Supp. 1359, 1365-67 (S.D.N.Y. 1991) (awarding attorneys' fees in the amount that reflected work done on plaintiff's successful copyright claim, and not work corresponding to plaintiff's unsuccessful non-copyright claims). After reviewing the time records presented by plaintiffs' counsel, we find that the workload generated by the copyright claim is less than one-half of the whole work product. Accordingly, for compensation purposes, we reduce the time by one half. See, e.g., Scanlon v. Kessler, 23 F.Supp.2d 413, 418 (S.D.N.Y. 1998) (reducing plaintiff's award of attorney's fees by two-thirds to reflect plaintiff's limited success on various infringement claims); Childress v. Taylor, 835 F.Supp. 739, 743 (S.D.N.Y. 1993).

As for the claimed hourly rates, they are entirely reasonable. We also see no basis to object to the listed disbursements.

Accordingly, we recommend awarding plaintiffs $22,500.00 in fees. There is also no reason to question the $4,139.31 in expenses, and this amount should also be awarded to plaintiffs.

31

CONCLUSION

For the reasons stated, we recommend entry of a default judgment against defendants H.S.M. International and Hesh Mirpuri jointly and severally, in the amount of $150,000.00 in statutory damages under section 504 of the Copyright Act, together with $22,500.00 in attorney's fees and $4,139.31 in costs under section 505 of the same act, for a total award of $176,639.31.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable John E. Sprizzo, Room 730, and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e); Thomas v. Arn, 474 U.S. 140 (1985); Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

**Dated: New York, New York**
**November 1, 2006**

**RESPECTFULLY SUBMITTED,**

**MICHAEL H. DOLINGER**
**UNITED STATES MAGISTRATE JUDGE**

Copies of the foregoing Report and Recommendation have been mailed
this date to:

Adam M. Cohen, Esq.
Kane Kessler, P.C.
1350 Avenue of the Americas
New York, NY 10019

H.S.M. International
Unit C-15/Floor
Kee Shing Centre
74-76 Kimberley Road
Tsim Sha Tsui, Kowloon
Hong Kong

Hesh Mirpuri
Unit C-15/Floor
Kee Shing Centre
74-76 Kimberley Road
Tsim Sha Tsui, Kowloon
Hong Kong